## IN RE MOUILLERAT'S ESTATE.

[Submitted February 1, 1893.   Decided March 19, 1894.]

ADMINISTRATORS—*Allowance of claim—Final judgment.*—The allowance of a claim against an estate and its approval by the district judge under section 154 of the Probate Practice Act, providing that every claim so allowed and approved must be ranked among the acknowledged debts of the estate and paid in the due course of administration, does not render such claim a final judgment so as to protect it from attack by protest against the allowance of the administrator's final account. (*Ryan v. Kinney*, 2 Mont. 454, distinguished. HARWOOD, J., dissenting.)

SAME—*Same—Contest.*—A creditor whose claim against an estate may be reduced by the allowance of an alleged debt is a person interested in the estate, and may contest the administrator's final account under sections 265 and 267 of the Probate Practice Act, providing that on the day appointed for the settlement of the account any person interested in the estate may appear and contest the same. (HARWOOD, J., dissenting.)

SAME—*Same—Statute of limitations.*—Creditors of an estate may, upon the settlement of an administrator's final account, contest an allowed claim as barred by limitation, since under section 156 of the Probate Practice Act no claim must be allowed by the administrator which is barred by the statute of limitations.

*Appeal from Ninth Judicial District, Gallatin County.*

PROCEEDINGS by creditors to contest an allowed claim against an estate. The contested claim was disallowed by ARMSTRONG, J. Affirmed.

Statement of the case by the justice delivering the opinion:

Nixon and Crave, creditors of the estate, protested against the allowance of the claim of Mendenhall, a creditor. The district court sustained the protest, and disallowed the Mendenhall claim. Mendenhall and the administrator appeal.

The administrator, J. P. Martin, filed his final account April 20, 1891. This account contains, among others, a list of claims of the fifth class, presented and allowed. In this list were the claims of the protestants Nixon for $142.40, and Crave for $300, and also the claim of J. S. Mendenhall, the appealing creditor, for $400. It appears from the final account that the estate will be able to pay only about forty-six per cent of said fifth-class claims.

The claim of Mendenhall was filed September 4, 1890. His affidavit setting forth his claim contains the following statements material to this inquiry: That on the 2d of September,

1885, an action was pending on the United States side of the territorial district court, on a bond for $1,600, in which case the United States was plaintiff, and Frank Mouillerat, the deceased, and one Olsen, as principals, and Charles Krug and said Mendenhall as sureties, were defendants. That on the 4th of September, 1885, the United States obtained a judgment against the defendants for $800; that Krug and Mendenhall paid this judgment, share and share alike; that neither Mouillerat or Olsen had paid to Mendenhall the $400 which he thus paid, nor any part thereof. Mendenhall annexes to his affidavit, setting forth the above allegations, a certified copy of the proceedings in the United States court in the case, to which he referred. That record is as follows:

"WEDNESDAY, September 2d, A. D. 1885.

"THE UNITED STATES, |
        *vs.* } 
"FRANK MOUILLERAT *et al.* |

"And now comes the plaintiff, by William H. De Witt, Esq., United States attorney, whereupon the plaintiffs dismissed their suit herein, the same having been compromised, and eight hundred dollars paid by the defendants.

"It is therefore considered by the court that the defendants go hence without day, and recover against the plaintiffs their costs incurred herein, taxed at $......."

It further appears from the record in the case at bar that this claim of Mendenhall against the estate of Mouillerat was allowed by the administrator June 27, 1890, and approved by the court March 23, 1891.

As above noticed, the final account containing the claim of Mendenhall, and that of the protestants, was filed April 20, 1891. On May 23, 1891, said Nixon and Crave duly filed their protest to the allowance of this final account. The ground assumed by the protestants was, that the claim of Mendenhall shows upon its face that it was not a judgment, and if it be any claim it is one upon an account not in writing, and if it be such an account, sufficient time elapsed between the accruing of the account, September 2, 1885, and filing of the same against the Mouillerat estate, September 4, 1890, to constitute

the bar of the statute of limitations.   The district court sustained the protest, and disallowed the Mendenhall claim, from which disallowance Mendenhall and J. P. Martin, the administrator, take this appeal.

The position of appellants is this: 1. That the claim of Mendenhall having been allowed by the administrator, and approved by the court, is a judgment, and cannot be attacked by this protest; and 2. That the protestants, Nixon and Crave, as creditors of the estate, have no authority to plead the statute of limitations, or to compel the administrator to plead it.

*Charles S. Hartman,* and *A. D. McPherson,* for Appellants.

I.   The claim of Mendenhall, being an allowed claim, has all the force and effect of a judgment, and cannot be attacked collaterally. (*Deck's Estate* v. *Gherke,* 6 Cal. 666; *Ryan* v. *Kinney,* 2 Mont. 456; *Moore* v. *Hillebrant,* 14 Tex. 312; 65 Am. Dec. 118; *Estate of Hidden,* 23 Cal. 362; *Estate of Schroeder,* 46 Cal. 304–17; *Estate of McKinley,* 49 Cal. 152; *Estate of Glenn,* 74 Cal. 567; 2 Black on Judgments, § 641, note 678.)

II.   The protestants, Nixon and Crave, as creditors of said estate, have no right or authority to plead the statute of limitations or compel the administrator to plead it. (Wood on Limitations of Actions, § 41, pp. 79, 80; 13 Am. & Eng. Ency. of Law, 706, title, Limitation of Actions, note 2, and cases cited; *Scott* v. *Hancock,* 13 Mass. 162; *Kennedy* v. *Powell,* 34 Kan. 23; *Brookville Nat. Bank* v. *Kimble,* 76 Ind. 195; *Allen* v. *Smith,* 129 U. S. 465; *Shields* v. *Schiff,* 124 U. S. 351.) The following authorities hold that an executor or administrator represents the testator so far as the personal property is concerned, and from the personal property he can pay a well-founded claim, although barred, without being obliged to take advantage of the statute of limitations. (13 Am. & Eng. Ency. of Law, 707, note 2, and cases cited.) But even if an allowed claim can be attacked collaterally, or if a creditor can compel the administrator in this case to plead the statute of limitations, is the claim of Mendenhall barred by the statute of limitations?   It appears from the face of the proceedings that the sum of $800 was paid by defendants in full settlement of the case and the compromise judgment of

dismissal entered accordingly. This payment was the consideration for the judgment. It also appears that the entire sum that was paid to obtain the compromise judgment aforesaid was paid by said Mendenhall and Krug, who were sureties on the bond, and, being sureties, they had a right to found their claim upon such judgment, and keep it alive as against their codefendants. Upon this question there is some division in the authorities; those of New York, Massachusetts, Alabama, and North Carolina holding in some instances that it cannot be done; however, in one New York court it has been held that under circumstances showing the suretyship of the party paying the judgment, and the fact that he was compelled to pay the sum, that he be substituted in place of the creditor and acquire his rights. On the other hand, the right to the subrogation in such cases is affirmed in *Coffee* v. *Tevis*, 17 Cal. 239; *Wheeler's Estate*, 1 Md. Ch. 80; *Brown* v. *White*, 29 N. J. L. 514; *McIntyre* v. *Miller*, 13 Mees. & W. 728. It appears that Mendenhall and Krug were compelled to pay the $800, and did pay it, and therefore they are entitled to be subrogated to the rights of the United States, the plaintiff in said action. (12 Am. & Eng. Ency. of Law, 150, note 7, and cases cited; B, note 1, and cases cited; *Sanford* v. *McLean*, 3 Paige, 117; 23 Am. Dec. 773; *Null* v. *Moore*, 10 Ired. 324; Freeman on Judgments, § 468.) Mendenhall having been surety on the bond, and having been compelled to pay the claim, equity substitutes him in place of the creditor as of course without agreement therefor. (Freeman on Judgments, § 468; *Sanford* v. *McLean*, 3 Paige, 117; 23 Am. Dec. 773; *Head* v. *Gervais*, Walk. 431; 12 Am. Dec. 577; *Barringer* v. *Boyden*, 7 Jones, 187. See, also, *Dempsey* v. *Bush*, 18 Ohio St. 376; Freeman on Judgments, 470; *Fleming* v. *Beaver*, 2 Rawle, 128; 19 Am. Dec. 629, and cases cited.) This compromise judgment is what Mr. Bishop, in his work on contracts, calls a contract created by law. (See Bishop on Contracts, § 556; *Gunn* v. *Barry*, 15 Wall. 610; *Moser* v. *White*, 29 Mich. 59; *O'Brien* v. *Young*, 95 N. Y. 428; 47 Am. Rep. 64.) Actions upon judgments, contracts, and other written instruments or records, under the statute which controls in this case, shall be commenced within six years from the time the cause

of action accrues. (See Code Civ. Proc., § 41, Comp. Stats.) The claim of Mendenhall is therefore not barred by the statute of limitations, was properly allowed, and the protest of Nixon to the allowance of the administrator should be overruled.

*Luce & Luce*, for Respondents.

I. There are two points in administration where an approved claim may be contested when application is made for the sale of property, and when an account is rendered for settlement. And it can be contested by a creditor. (*Estate of Loshe*, 62 Cal. 413–15; *Estate of Hill*, 62 Cal. 186; *Weihe* v. *Statham*, 67 Cal. 84.) The supreme court of California in *Beckett* v. *Selover*, 7 Cal. 215, 68 Am. Dec. 237, rendered an exhaustive opinion on the very point in controversy, that the allowance did not bind any one not a party thereto. (See opinion in *Beckett* v. *Selover*, 7 Cal. 241, 242; 68 Am. Dec. 237.) It is true this was a contest by the heir, but the reasoning of the opinion applies to the creditor who contests under section 267 of our Probate Practice Act. If there were any doubt of this, the foregoing citation and the case of the *Estate of Hidden*, 23 Cal. 363, cited by appellants, should be conclusive. This is no collateral attack. Conceding the allowance to be a judgment, it is an erroneous one and has been vacated by the court that rendered it, which it had jurisdiction to do, before final judgment settling this account and decreeing distribution.

II. Upon the second proposition there is little need of comment. A debtor may waive the statute of limitations, and cannot be compelled to raise it, that we know of. An administrator cannot waive it, but both the administrator and the probate court are by statute expressly forbidden to allow a claim barred by the statute. (Comp. Stats., § 156, p. 313; *Estate of Hidden*, 23 Cal. 362.) You must first have a judgment before you can claim the right to be subrogated to the judgment creditor. You must have paid this judgment before any question of subrogation arises. The judgment plainly stated that it is a judgment of dismissal by agreement, and that the defendants recover of the plaintiff their costs; it is a judgment, but it is a judgment in favor of the defendants. A

judgment of dismissal by agreement and compromise is a judgment on the merits against the plaintiff. (*Merritt* v. *Campbell*, 47 Cal. 542; on rehearing, 47 Cal. 548; *Phillpotts* v. *Blasdel*, 10 Nev. 19, 23; *Bank of Commonwealth* v. *Hopkins*, 2 Dana, 395.) No claim has ever been presented to the administrator except this claim on a pretended judgment, which shows on its face that it is a judgment in favor of the very party who claims that it is a judgment against him. If any claim ever existed which could have been brought against Mouillerat, in his lifetime, for money had and received, no such claim has ever been presented to the administrator, and if it had, it would have been barred by the statute of limitations. (*Chipman* v. *Morrill*, 20 Cal. 136.) No action for the recovery of this $800, under said compromise, could ever have been sustained upon the facts set forth in the claim of Mendenhall. Mr. Sheldon (Sheldon on Subrogation, § 240) says: "The doctrine of subrogation is not applied for the mere stranger or volunteer who has paid the debt of another without any assignment or agreement in subrogation, and without being under any legal obligation to make the payment, and without being compelled to do so for the preservation of any rights or property of his own." Money paid under a compromise does not come within this rule. (*Sanford* v. *McLean*, 3 Paige, 122; 23 Am. Dec. 773; *Ætna Life Ins. Co.* v. *Middleport*, 124 U. S. 547.)

De Witt, J.—Section 154 of the Probate Practice Act provides: "Every claim allowed by the executor or administrator, and approved by the probate judge, or a copy thereof, as hereinafter provided, must, within thirty days thereafter, be filed in the probate court, and be ranked among the acknowledged debts of the estate, and be paid in due course of administration."

Mendenhall's claim was allowed by the administrator and approved by the court. Appellants contend that these facts constitute a judgment, which is final, and which must be attacked by a motion for a new trial or an appeal, and which cannot be disturbed on a contest of the account of the administrator. But such is not the law. It is a judgment of a quali-

fied nature only.   Such approval and allowance place the claim "among the acknowledged debts of the estate, to be paid in due course of administration." (*Magraw* v. *McGlynn*, 26 Cal. 431; *Estate of Loshe*, 62 Cal. 413; *Estate of Hill*, 62 Cal. 186; *Weihe* v. *Statham*, 67 Cal. 84.) And "in due course of administration" the estate reaches the stage where it is operated upon by the provisions of section 265, et seq., of the Probate Practice Act.   Section 265 is as follows:

"When any account is rendered for settlement, the court or judge must appoint a day for settlement thereof.   The clerk must thereupon give notice thereof by causing notices to be posted in at least three public places in the county, setting forth the name of the estate, the executor or administrator, and the day appointed for the settlement of the account, which must be on some day of a term of the court.   The court or probate judge may order such further notice to be given as may be proper."   Section 267 provides for a contest, as follows: "On the day appointed, or any subsequent day to which the hearing may be postponed by the court, any person interested in the estate may appear and file his exceptions in writing to the account, and contest the same."

When this section of the statute provides that "*any person interested in the estate*" may contest the account, it seems to be a plain declaration that *any person* interested may make the contest.   It would seem not open to question that a creditor was interested in the estate when the account showed the allowance of an alleged debt, which such creditor claimed to be wrongfully allowed, and the allowance of which cut down the percentage which such creditor was to receive from the estate.   Such is the position of the creditors and protestants, Nixon and Crave, as to the allowance of the Mendenhall claim. Such was the course of proceeding in the lower court.   Nixon and Crave contested the account, as they might, under the provisions of sections 265 and 267, etc.   The allowance and approval of the claim does not seem to be in the nature of a final judgment, when the statute provides that it shall not be final, but shall be open to a contest (Probate Practice Act, § 267) of the administrator's account.   Such seems to be a very plain view

of the statute.    On the other hand, the view contended for by appellants would leave a person desiring to contest an account remediless in many cases.

Returning to the portion of the Probate Practice Act treating of the claims against the estate, we have to observe as follows: Section 154 speaks about the allowance of a claim by the administrator, and the approval by the probate judge.    These acts may be done without any hearing at all.    It is true· that section 156 provides: "When a claim is presented to the probate judge for his allowance, he may, in his discretion, examine the claimants, and others, on oath, and hear any other legal evidence touching the validity of the claim."    The judge, it is observed, may, in his discretion, examine the claimant and hear evidence; but he is not required so to do, and there is nothing to prevent him, if he happens to observe no objection to the claim, from allowing it without any hearing at all. Now, if the probate judge pursues this course, which he may under the law, and which we doubt not is the most frequent occurrence in that court, we have this situation: A claim against the estate has been allowed.    Another creditor of the estate is injured thereby, for the reason that it reduces the percentage which he is to receive in case the estate does not pay its debts in full.    That creditor is interested in the estate, and there is facing him, according to appellant's view, a final judgment, which is to his injury, given without his knowledge, and without his having a day in court.    There has been no hearing to which he has been invited; there has been no adjudication at which he has been notified to appear.    Of course, it may be said that he can be present in the probate court, or before the probate judge, during all the period during which claims may be filed, and watch for the presentation of the claim to which he believes he has a valid objection.    But we are of opinion that the law does not require any thing of this sort, especially where there is such a simple construction of the law as we have above described, which gives such a creditor an opportunity to come in upon notice upon the settlement of the administrator's account.

Furthermore, here is another view: Suppose a claim be presented, allowed, and approved without a hearing, as it may be,

as above noted; the record would appear in this way: simply the account of the alleged creditor, supported by his *ex parte* affidavit, and indorsed. In fact, the indorsements upon this Mendenhall claim are as good an example as we could cite. They appear as follows:

"No. 20.

"IN THE DISTRICT COURT
"OF
"GALLATIN COUNTY, MONTANA.
"*In the Matter of the Estate of*
"*Frank Mouillerat, Deceased.*
"Claim of John S. Mendenhall, $400.00.

"The within claim presented to J. P. Martin, admr. of said deceased, is allowed and approved for $400.00 this 27th day of June, 1890.        J. P. MARTIN, admr. of said deceased.

"Allowed and approved for $400.00, this 23d day of March, 1891.        FRANK HENRY, District Judge.

"Filed Sept. 4, 1890.

"JOHN MCLEOD, Clerk,
"By R. H. CRAWFORD, Deputy Clerk."

Now, according to appellant's view, the creditor interested in the estate, and wishing to make a contest, finds a record of the sort described, which is to be held to be a final judgment; that is to say, it is a bill or an account, with an *ex parte* affidavit, and the indorsements of administrator and judge, of "Allowed" and "Approved." What could he present on a motion for a new trial or appeal? His showing of the wrongfulness of the account would not be in the record, nor would there be any evidence to review. We cannot hold such construction of the law when we have before us section 267, providing for a contest by a creditor, in which he may have a hearing.

*Ryan* v. *Kinney*, 2 Mont. 454, has been mentioned in this case. In that case there was clearly an attempt to attack collaterally a final judgment of the probate court. We fully concur with the decision against that attempt. But here the allowance by the administrator, and the approval by the probate judge, of the Mendenhall claim, we have undertaken to

show, were not a final judgment, and therefore the contest of Nixon and Crave is neither directed at a final judgment nor is it a collateral attack upon what the probate court has done, but, on the contrary, it is a pursuance of the direct proceeding, provided by sections 265–68 of the Probate Practice Act, for determining whether or not the Mendenhall claim was to be paid out of the Mouillerat estate. *Ryan* v. *Kinney*, 2 Mont. 454, did not mention or construe section 267 of the Probate Practice Act, or any similar provision, which section 267, we hold, authorizes the contest by Nixon and Crave. That section is part of the Probate Practice Act passed February 16, 1877 (10th sess., p. 370), a year after the decision of *Ryan* v. *Kinney*, 2 Mont. 454. But even if it, or a similar provision, were a part of the law when *Ryan* v. *Kinney* was decided, it would not have been before the court for construction in that case, as the proceeding was not taken under said section, or any similar thereto. And it is this section, as is apparent above, that we hold authorizes this contest. Therefore, *Ryan* v. *Kinney*, 2 Mont. 454, is not applicable to the case at bar.

Appellants contend that the determination of the action in the United States court in 1885 was a judgment in favor of the United States, and against Mouillerat and his codefendants, among whom was Mendenhall, and that Mendenhall was subrogated to the rights of the United States in that judgment. If that be true, then they contend that the statute of limitations, in reference to judgments, would apply to the Mendenhall claim, and that it would not be barred. If the United States did not obtain a judgment in the case described in the United States court, there was no judgment in which Mendenhall could be subrogated. It is clear that the United States did not obtain a judgment against Mouillerat, Olsen, Mendenhall, or Krug. The record from the United States court states plainly that that case was dismissed as compromised; and it further appears from that record that the judgment was that the defendants go hence without delay, and recover a judgment against the plaintiff for their costs. So, there was no judgment in favor of the United States. Therefore, the most that appears is that Mendenhall paid money for the benefit of Mouillerat in 1885.

Mendenhall's claim against Mouillerat, therefore, does not appear to be founded upon any judgment or upon any written instrument. It was therefore barred by the statute of limitations (Code Civ. Proc., § 44) in three years from September, 1885, and was consequently barred on September 4, 1890, when it was filed as a claim against the Mouillerat estate.

Appellants argue that the statute of limitations is a personal privilege, and that one cannot be compelled to take advantage of it unless he chooses. However true this may be as a general principle, it does not apply to the administrator in this case, for his action is controlled by section 156 of the Probate Practice Act, which provides that "no claim must be allowed by the executor or administrator, or by the probate judge, which is barred by the statute of limitations."

The judgment of the district court sustaining the protest of Nixon and Crave, and disallowing the claim of Mendenhall, is therefore affirmed.

*Affirmed.*

Pemberton, C. J., concurs.

Harwood, J., dissenting.—Appellant Mendenhall presented his claim against the estate of Mouillerat, and the same was approved by the administrator and duly allowed by the court. (Probate Practice Act, §§ 153, 154.) About one year thereafter, when the administrator presented his final account for settlement, certain other creditors of said estate set up a contest of appellant's claim, on the ground that it was barred by the statute of limitations. The court sustained said objection, whereby appellant was denied payment of his claim out of the funds of said estate. The claim was for money alleged to have been paid out by Mendenhall, as surety for decedent, in a proceeding against decedent in the United States district court in the year 1885. The record of said court shows the proceeding, and that settlement was made; and the evidence undoubtedly establishes payment by Mendenhall, on behalf of decedent, as claimed. But it is contended that the record of said proceeding in the United States court does not, in itself alone, establish payment by the surety; and therefore it is contended that appellant's claim would fall within the class barred by the lapse of three years.

The first proposition insisted on by appellant is that the due allowance of his claim by the administrator and the court having jurisdiction of said estate, as provided by law, amounted to the establishment thereof in the nature of a judgment, and that said claim was not subject to be contested by other creditors of the estate at the time and in the manner pursued in this contest.

The question as to the effect of the allowance of a claim against an estate, as provided by the statute, appears to be one of considerable difficulty. Some authorities affirm that such allowance places the claim in the same *status* as a judgment (See 2 Black on Judgments, 641, and cases cited; also, California cases cited in appellant's brief); and, if that conclusion is correct, such allowance cannot be disregarded or ignored, and another and independent contest set up against said claim. If the order of allowance is in the nature of a judgment, it would be necessary, in order to avoid such judgment, to follow it up by appeal, and obtain its reversal, or attack it by other direct action.

In support of the proposition that the allowance of the claim against the estate establishes it in the nature of a judgment, several provisions of the statute may be pointed to. Thus, it is provided that, after allowance in the manner prescribed, the claim shall be "filed in the probate court, and be ranked among the acknowledged debts of the estate, to be paid in due course of administration." (Probate Practice Act, § 154.) And it is further provided that "a judgment rendered against an executor or administrator, upon any claim for money against the estate of his testator or intestate, only establishes the claim in the same manner as if it had been allowed by the executor or administrator and the probate judge, and the judgment must be that the executor or administrator pay in the due course of administration the amount ascertained to be due." (Probate Practice Act, § 161.) This provision might be taken as bearing strongly in favor of the view contended for by appellant—that the proceeding resulting in the allowance of the claim was equivalent in its force to a judgment. Again, there are provisions of statute for the hearing of evidence by the probate judge, as to the merits of the claim, before allow-

ance (Probate Practice Act, § 156); and also for a reference
of the claim for investigation through the agency of a referee.
(Probate Practice Act, §§ 164, 165.)  It seems, too, that the
order of allowance, and the proceeding leading up to that order,
are subject to rehearing on motion for new trial, as provided in
sections 323 and 324 of the Probate Practice Act, and to appeal,
as provided in section 445 of the Code of Civil Procedure.
(See *In re McFarland's Estate*, 10 Mont. 445.)

The tendency of all those provisions would seem to point
to the conclusion that the final allowance of the claim of
a creditor against an estate by the administrator and probate
judge amounted to some thing more than a proceeding which
could be ignored at pleasure, and leave the claim open to con-
test by any party interested and desiring to question it; and,
from a consideration of the statutes relating to this subject, and
the cases in which this question has been discussed, I am
drawn to the conclusion that such allowance does establish the
claim as against the collateral attack of all except the heirs and
their representatives.   This exception in favor of the heirs is
made by statute, but does not appear to extend to others.   The
language is that "all matters, including allowed claims not
passed upon in the settlement of any former account, or on
rendering an exhibit, or on making a decree of sale, *may be
contested by the heirs*, for cause shown."   (Probate Practice Act,
§ 268.)   This section undoubtedly holds the claim open to
question by the heirs in a contest independently of the proceed-
ings whereby it was theretofore passed upon and allowed by
the court.   And the language of that section seems to limit
that privilege as one reserved to the heirs alone.   If it was
not the intention to so limit the privilege to set up another
contest as to the claim after its allowance, why did the legis-
lature so specifically declare that those matters were open
to contest "*by the heirs?*"   We have no doubt this is a wise
and just provision in favor of the heir.   Where an estate
possesses sufficient assets to satisfy all demands, there is no
motive to lead claimants to investigate, find evidence, and con-
test one another's demands when presented for allowance, so as
to reduce each claim to its proper proportions, or, if without
merit, to cause its disallowance altogether.   (*Beckett* v. *Selover*,

7 Cal. 215; 68 Am. Dec. 237.) If the claim, however, after allowance, is only open to contest by the heirs, as seems to be the intendment indicated by the language of the statute, it follows that the several creditors who so desire must present their contest against demands of others when such demands are before the court for allowance. A contrary holding would, in effect, deny all force to the proceeding of the court whereby claims are investigated and allowed, and subject such proceedings to be disregarded at the pleasure of any creditor who wishes to introduce another contest, and occupy the attention of the court in trying the same. Such holding is contrary to the views of the court in *Ryan* v. *Kinney*, 2 Mont. 454, and, I think, is not in harmony with the theory of the statute providing the practice as to the investigation and allowance of claims. There appears to be ample provision made by statute to enable creditors to contest claims proposed against an estate, as the same come up for consideration and allowance; and it would seem that such would be the more convenient and acceptable time for contest of individual claims than a subsequent time, long after the claim had been allowed and the administrator's account is before the court for examination. The result of such holding is to keep the affairs of an estate unsettled indefinitely.

The provisions of section 267 of the Probate Practice Act, that any person interested in the estate may contest the administrator's account, should not be so applied as to annul the force of other special provisions of statute in reference to claims of third persons against an estate. The administrator's account contains numerous items besides accounts of third persons against the estate which have been allowed and approved by the probate court. As to such other terms, the administrator's account should be, and is, open to contest by any person interested. But, as to claims of third persons against the estate, the statute has made special provisions for their presentation, contest, and adjudication, even to appeal from court to court. According to the holding of the majority of this court, such adjudication establishes nothing. It may be brushed aside by any person interested in the estate; and, ignoring that adjudication, although it had gone to the court of last resort, he may

again open the contest when the administrator's account is presented. Such a result is not according to the theory plainly visible in the statutory provisions, nor does it conform to the authorities on the subject, especially decisions of the supreme court of Montana, cited *supra*.

The accounts of third persons against the estate are not in fact the administrator's account. Those accounts are independent of the administrator. He is not the one to prosecute them against the estate, nor to defend the matter of their allowance in case of contest of his account; yet the theory of the majority opinion in this case seems to be that, because the administrator's account may be contested, the allowed accounts of third persons against the estate are thereby thrown open to contest as if they were the administrator's accounts. The administrator would not be the supporter of such accounts; he should, and probably would, be the contestant at the proper time, and until the account was established. Therefore, what difference would it make to him if third persons' allowances were struck out of his account, unless he had paid the same on the strength of the allowance by the court? But observe the peculiar result of the holding in this case. If the administrator, having once contested a claim against his estate, even to the court of last resort, and has been defeated, and the claim established by such adjudication, the administrator can still say, according to the holding in this case—"That goes for nothing"—and, though the estate comprise millions, he may refuse payment, and, when the administrator presents his account, commence the same contest, and go through the courts with it again. Or defenses to claims against the estate may be set up by piecemeal—some when the claim is presented for allowance, and others when the administrator's account is presented; some by one, and some by another, interested in the estate. Or, if defeated at the first trial, this need not be followed up by appeal or motion for new trial, as the statute provides, but the attack may be suspended until a more convenient time. Such are some of the peculiar results of the holding in this case.

The citations in the majority opinion neither support its reasoning nor its conclusion. In the case of *Estate of Loshe*, 62 Cal. 413, the court* expressly decline to consider the point

involved in the case here, saying: "It is not necessary to consider how far the allowance or approval of a claim resembles or gives the effect of a judgment." The California court points to the *statute of that state* as authorizing the contest there under consideration. So, the case of *Estate of Hill,* 62 Cal. 186, cited in support of the majority opinion, is not in point, because the contest in that case was "by the heirs and distributees of deceased." Likewise, the case of *Weihe* v. *Statham,* 67 Cal. 84, cited in support of the majority opinion, was an " action by the heirs of William H. Hill," etc.; and the court say in that case: "It has several times been decided that the allowance of a claim by the administrator and probate judge is not conclusive upon the heirs, but they may contest such allowance in subsequent proceedings of the probate court"; and the California statute and cases are there cited. The same rule would hold here by special provision of the statute, as we have pointed out. The case last above mentioned is the latest case cited from California, and it may be observed how carefully that court uses language to confine the contest at that stage of the claim to the heirs. One other case—*Magraw* v. *McGlynn,* 26 Cal. 431—is cited for support of the majority opinion, but I fail to find any such case reported in the book. These citations illustrate how easy it is to cite cases as supporting a view, and also how deluded one would be in looking to the citations for confirmation of the point in question.

There is no warrant for the presumption asserted in the majority opinion, that the administrator and probate court would neglect the solemn duty, imposed by law upon them, of carefully investigating claims against the estate before allowance thereof; and, had I found reason to subscribe to the conclusion reached in this case by the majority, I should withhold concurrence in the observations which carry that imputation. If such abuse and negligence in relation to a sacred trust, as the opinion "doubts not is the most frequent occurrence in that court," could be satisfactorily established by proper evidence, it would be a matter for legislative consideration. It is well known that in a judicial inquiry as to what the law *is,* such considerations are not pertinent, except as mere suggestions looking towards the expediency of a legislative change.

But no such conclusion is warrantable as a mere presumption; and there is no showing that the probate courts in this state neglect the solemn duties imposed upon them by law and the nature of the trust confided to their care, nor was that a matter for investigation in the case.   My investigation of this question has led to the belief that a statutory provision for vacating the order of allowance of a claim against an estate upon presentation of sufficient grounds, supported by affidavit, within reasonable time, such as that found in the Probate Code of Missouri, would be an improvement of our statute on this point.   (See Kelley's Missouri Probate Guide, § 309, p. 261.)   There is probably more need for such a provision since the adoption of the constitution, giving our district courts original jurisdiction of all probate matters; for under the former system, if a claim was thought to be erroneously allowed against an estate, the whole question could be carried by appeal, for trial anew, into the district court.   (Code Civ. Proc., §§ 445–58.)   This gave time and opportunity to reopen the case, and correct errors on appeal.   But those provisions have become obsolete through the changes made by the constitution.