### In re Estate of William K. Mertz, Deceased.

Matt Yaple and Hugo W. Greb, Administrators of the Estate of William K. Mertz, Deceased, Appellants, v. Ella Mertz Mahy et al., Heirs at Law of William K. Mertz, Deceased, Appellees.

### Gen. No. 7,901.

1. ESTATES OF DECEDENTS—*sufficiency of evidence to show good faith of administrators in employment of estate assets in effort to conserve its interests.* Evidence upon objections to the final account of administrators held to show that payments made by them to liquidate the estate's proportion of the diminution of the capital of a bank of which it was a stockholder, resulting from the worthlessness of certain commercial paper, were made by them in good faith and with a view to protecting the interests of the estate, especially in view of the fact that one of the administrators, interested individually as a stockholder in the bank, acted in the same way in respect of his individual interest.

2. ESTATES OF DECEDENTS—*liability of administrators for payments made in good faith attempt to conserve assets of estate, where expected beneficial results did not materialize.* Where administrators, in good faith, employ the assets of the estate in a manner which they deem for its benefit for the purpose of conserving its interests, they cannot be held liable even though it shall thereafter appear that their action did not result beneficially, or that they had made a mistake in respect of the benefits that would probably result from their action.

3. Estates of Decedents—*propriety of disallowance of objections to payments made by administrators in good faith effort to conserve assets of estate but without formal sanction of court and resulting in loss.* Where the evidence upon objections to the final account of administrators showed that in making of payments to liquidate the estate's proportion of the diminution of the capital of a bank of which it was a stockholder, resulting from the worthlessness of certain commercial paper, the administrators acted in good faith and for the purpose of conserving the assets of the estate, objections to the allowance of such payments should not be sustained, although the benefits expected to result therefrom did not materialize and although such payments did not have the formal sanction of the county court, it appearing that the court was duly advised of the transaction and approved thereof.

4. Estates of Decedents—*liability of estate upon guaranty of decedent where no claim thereunder made within year after granting of letters.* Where the holder of a guaranty signed by a decedent and others made no claim thereon against the estate of the decedent within one year after the granting of letters of administration upon his estate, any right of the holder thereunder against the estate was barred by Cahill's St. ch. 3, ¶ 71.

5. Estates of Decedents—*propriety of allowance of objections to payment of claim by administrators under order of court where claim barred by Cahill's St. ch. 3, ¶ 71.* Where administrators of an estate paid a claim against it which was barred by Cahill's St. ch. 3, ¶ 71, objections to the allowance of such payment on their final account were properly sustained, although in making such payment they acted under authority of an order of the county court.

6. Estates of Decedents—*power of county court to authorize payment by administrators of claims barred by Cahill's St. ch. 3, ¶ 71.* The county court is without power to authorize payment by the administrators of a claim against an estate which has become barred by reason of Cahill's St. ch. 3, ¶ 71.

7. Estates of Decedents—*sufficiency of evidence to support reduction of allowance claimed for attorneys' fees paid.* Evidence on objections to the final account of administrators held to support the conclusion of the circuit court in reducing the credit claimed on account of payment of attorneys' fees.

Appeal by plaintiffs from the Circuit Court of Cass county; the Hon. Guy R. Williams, Judge, presiding. Heard in this court at the October term, 1925. Affirmed in part, reversed in part, and remanded with directions. Opinion filed July 1, 1926.

THOMAS D. MASTERS, for appellants.

BRADLEY, WILLIAMS & FARRELL, for appellees; THOMAS E. D. BRADLEY and EDWARD J. FARRELL, of counsel.

MR. PRESIDING JUSTICE NIEHAUS delivered the opinion of the court.

William K. Mertz, who was a resident of Cass county, died intestate on April 26, 1922, and letters of administration were therefore granted by the county court of Cass county to the appellants, Matt Yaple and Hugo W. Greb, on May 19, 1922. The inventory of the estate, which was filed and approved by the county court, showed the value of the property of the estate, which included real and personal property, to be about $213,000. A part of the assets of the estate were 50 shares of the capital stock of the Kilbourne State Bank of the par value of $5,000. The appellants, as administrators, in due course of administration of the estate fixed upon the August, 1922, term of the county court for the adjustment of claims against the estate. On July 8, 1924, the appellants as administrators filed their final account, to which a number of objections were filed by the heirs at law of the deceased. The objections were overruled, and the report approved by the county court. Thereupon an appeal was prosecuted by the heirs at law, who are the appellees here, to the circuit court of Cass county. Upon the hearing of the objections in the circuit court, all the objections were overruled, except those pertaining to three specific matters. The appellants in their report asked to be credited with $8,200, which sum was paid to the Kilbourne State Bank ostensibly for the purpose of preventing the bank from being closed by the State auditor. They also ask credit for $6,332.24, which was paid to the First National Bank of Chicago, to satisfy an alleged liability of the deceased on

a written contract of guaranty, signed by the deceased and other stockholders of the Kilbourne State Bank, to pay any indebtedness of the Kilbourne State Bank to the First National Bank of Chicago. They also ask credit for $9,120 for fees paid to the attorneys for legal services rendered in the course of the administration of the estate. The objections of the heirs at law were sustained with reference to the first two items, for which the appellants sought credit, and the court reduced the amount of the attorneys' fees, by cutting off $1,135, and thereupon ordered the appellants to recast their account, by eliminating the $8,200 item paid to the Kilbourne State Bank, and the $6,332.24 item paid to the First National Bank of Chicago, and by deducting $1,135 from the amount for attorneys' fees. From this order and judgment of the circuit court, an appeal is prosecuted.

Concerning the $8,200 item, for which the appellants ask credit, it appears from the evidence that this amount of money was paid by them during the administration year, and paid to liquidate the estate's proportion of the loss or diminution of the capital of the Kilbourne State Bank by the worthlessness of a certain amount of commercial paper which was part of the assets of the bank, and amounted to the sum of $48,843.35. It appears from the evidence that this worthless commercial paper was discovered by the State auditor in his investigation of the financial condition of the bank, and he thereupon notified the owners of the stock in the bank on February 28, 1923, that unless this impairment in the capital of the bank was made good by March 10 following, the bank would be closed, and its affairs wound up. In this situation which called for prompt and speedy action the appellants representing the estate which was one of the larger stockholders of the bank, and after consultation with the attorneys for the estate, and with the county judge, joined with the other owners of the stock of

the bank in carrying into effect a plan by which the worthless commercial paper referred to was removed, and substitution made therefor in money and assets of full value, and $8,200 was the proportion to be borne by the estate, as stockholder in the bank, and that amount was paid by the appellants, as administrators of the estate. A careful consideration of the evidence leaves no doubt about the good faith of the appellants in acting for the estate in this transaction, and it is also evident that they acted with a view to protecting the interests of the estate. This feature of the case is further emphasized by the fact that one of the administrators was interested as an individual stockholder and acted in regard to the estate matter in the same way that he acted concerning his own individual interests. It is contended by the appellees that the appellants should not be allowed to take credit for the item referred to, because they did not have the sanction of the county court in making the payment referred to for the benefit of the estate; and that the payment of the money for the purpose indicated did not result in the benefit which it was supposed would result from the adjustment or rehabilitation of the capital of the bank, because the bank shortly afterwards became insolvent, and the affairs of the bank were put into the hands of a receiver. Concerning this contention, it may be said that while the evidence does not disclose that the appellants obtained any order from the county court authorizing the expenditure of the money for the purpose referred to, the inference to be drawn from the evidence is sufficiently clear to justify the conclusion that the action of the appellants in this matter had the approval of the county judge. It is a well-established rule concerning the action of administrators in matters of this kind, where administrators act to protect what they consider to be for the benefit of an estate, and for the purpose of conserving its best interests, and act in good faith, that they can-

not be held liable, even though the result of their action may not actually result beneficially; or it should afterwards appear that they made a mistake with reference to the benefits or gains that would probably result from their action. In an early case, *Christy v. McBride,* 1 Scam. 75, the Supreme Court defined this rule, which has been followed concerning matters of this kind. It is there said: "If an administrator has acted for the benefit of the estate, used proper diligence, and acted with ordinary care and circumspection in the discharge of his trust, he ought not to be held answerable for losses which could not have been foreseen, and which ordinary precaution may not guard against. The general principle which seems to run through all the authorities, as to his liability, recognize the doctrine, that if he acts honestly and prudently, though there be a loss to, or diminution of, the testator's estate or rights, he will not be liable." It is also said in *Christy v. Christy,* 225 Ill. 547: "In the performance of his duties an administrator must act with the highest degree of fidelity and with the utmost good faith, but he is held to the exercise of only that degree of skill and diligence which an ordinarily prudent man bestows on his own similar private affairs. Nothing more can be required of him, and if his acts will stand the test of that rule he cannot be held liable for any loss that may be sustained by the estate of his intestate." 11 Am. & Eng. Encyc. of L. (2nd Ed.) 904; *In re Corrington,* 124 Ill. 363. Applying the rule announced in the cases cited to the action of the appellants as administrators, with reference to the matters referred to, we conclude that they are entitled to the credit in their final report, for the item referred to.

The credit claimed by the appellants for the $6,332.24 item, however, raises a different question. This item involves a payment made by them as administrators to the First National Bank of Chicago,

and it appears from the evidence that the deceased, William K. Mertz, with three others, who were connected with the management of, or interested in the Kilbourne State Bank, entered into a written agreement with the First National Bank to secure an extension of credit for the Kilbourne State Bank, and by this written agreement guaranteed to the First National Bank the prompt payment, when due, of any and all indebtedness of the Kilbourne State Bank resulting from the extension of this credit, limiting their liability, however, to a total sum of $20,000. Apparently the extension of credit obtained from the First National Bank by virtue of this agreement resulted in creating an indebtedness of the Kilbourne State Bank to the First National Bank of $19,098.33. This indebtedness was evidenced by and embodied in promissory notes which were given and renewed from time to time by the Kilbourne Bank, and were finally consolidated in the one $20,000 note. Just what was the condition or amount of the indebtedness at the time of the death of Mertz does not clearly appear; but no claim or demand was made by the First National Bank under the guaranty contract upon the appellants as administrators of the estate, and no claim or demand was exhibited to the county court or filed against the estate, within one year after the granting of the letters of administration; nor at any time, as required by the statute. If, therefore, the First National Bank had any claim against the Mertz Estate, growing out of the guaranty contract referred to, such claim or demand was barred under section 70 of the Administration Act [Cahill's St. ch. 3, ¶ 71]. *Stone v. Clarke's Adm'rs,* 40 Ill. 411; *Pearson v. McBean,* 231 Ill. 536; *Gross v. Thornson's Estate,* 286 Ill. 185; *Morse v. Pacific Ry. Co.,* 191 Ill. 356; *Chicago Title & Trust Co. v. Corporation of Fine Arts Bldg.,* 288 Ill. 142; *Snydacker v. Swan Land & Cattle Co.,* 154 Ill. 220; *Rassieur v. Jenkins,* 170 Ill. 503. The demand made for

payment of the indebtedness, of the Kilbourne Bank growing out of the guaranty contract, by the First National Bank, was made upon Mr. Yaple individually, as one of the signers of the guaranty contract, nearly two years after the issuance of the letters of administration on the Mertz Estate, and it was after this personal demand that the appellants filed a petition in the county court praying for an order authorizing them to pay to the First National Bank the $6,332.24 item, which was alleged to be the liability of the Mertz Estate to the First National Bank, and the authority was granted by the county court. It must be pointed out in connection with this payment to the First National Bank that such payment of a claim which had been barred by limitation, and which had never been allowed by the court in the way provided by the statute, was clearly without authority of law, and was in violation of the duty of appellants, as administrators, which duty required them to defend the estate against the allowance of any claim which had been barred by limitation. *Unknown Heirs of Langworthy v. Baker,* 23 Ill. 484; *McCoy v. Morrow,* 18 Ill. 524; *Hapke v. People,* 29 Ill. App. 546; *Fragd v. Fragd,* 175 Ill. App. 246. Nor did the county court have power to authorize the payment of an alleged claim against an estate contrary to the provisions of the statute. County courts have no judicial power in directing the administration of estates except such as conferred upon them by the statute. *Chapman v. American Surety Co.,* 261 Ill. 594. A county court could not therefore authorize an administrator to pay the claim after the claim was barred from payment by the statute. To authorize payment under these circumstances would in effect nullify the provision in the statute. We are of opinion therefore that the order of the court disallowing the credit for the item of $6,332.24 was proper.

We find no error in the action of the court in reducing the amount claimed as a credit for attorneys' fees. The reduction of $1,135 was fully warranted by the evidence. For the reasons stated, the order of the circuit court is affirmed in all respects except as to the $8,200 item, and the cause is remanded with directions that in recasting the account of appellants, the appellants be given credit for the $8,200 item.

*Affirmed in part, reversed in part, and remanded with directions.*