## IN RE ESTATE OF THOMAS BARLOW WALKER.
## MINNEAPOLIS CENTRAL CITY MARKET COMPANY, APPELLANT.[1]

September 25, 1931.

No. 28,574.

[1]Reported in 238 N. W. 58.

*Brill & Maslon,* for appellant.

*Henry N. Benson,* Attorney General, and *John F. Bonner,* Assistant Attorney General, for the state.

DIBELL, J.

The claim of the Minneapolis Central City Market Company for $147,303.90 against the estate of Thomas Barlow Walker was allowed by the probate court of Hennepin county. Upon a trial de novo on appeal to the district court the claim was disallowed. The market company appealed from the district court judgment of disallowance. The state was admitted a party because the claim, if allowed, was a deductible item in the imposition of inheritance taxes. The state's claim is that the debt was barred when presented.

The executors of the estate favor the allowance of the claim. They do not appear on this appeal.

These questions are presented:

(1)  Whether the claim was barred; it being the contention of the market company that the claim was one against which the statute did not commence to run until demand was made.

(2)  Whether there was a part payment which tolled the statute.

(3)  Whether there was a written acknowledgment of the debt which tolled the statute.

(4)  Whether the executors can waive the bar of the statute.

Thomas B. Walker died on July 28, 1928, the owner of a large estate. The hearing on claims was set for May 6, 1929. The claim of the market company for $147,303.90 was presented on July 25, 1929. On the same day the executors, by their petition, asked that it be allowed. On July 26, 1929, it was allowed. The allowance was vacated, and the state was allowed to intervene to protect its claimed succession tax. On the hearing the claim was allowed by the probate court. On appeal to the district court and on a trial de novo it was disallowed by judgment of date March 26, 1931, and this is the judgment involved on this appeal.

One claim of the market company is that the debt was due only on demand in fact, which it was contemplated by the parties would not be made until an indefinite time in the future, and therefore the statute is not controlling as to seasonable time nor the time of commencement of its running. The statutory period is six years. They rely largely upon Fallon v. Fallon, 110 Minn. 213, 124 N. W. 994, 32 L.R.A.(N.S.) 486, 136 A. S. R. 464, and Andrews v. Andrews, 170 Minn. 175, 212 N. W. 408, 213 N. W. 899, 51 A. L. R. 542. So far as this claim involves a question of fact, and to some extent it does, it has been determined by the trial court adversely to the company. The company's contention cannot be sustained. The account in the books of the market company and Walker ran from 1914 to 1918, with transactions noted for each year. In the latter year there was but one and that on November 1. There were no other entries until 1928. On February 1 of that year there was

a notation that a new ledger was opened. On February 8, 1928, there was a debit and credit entry to correct a mistake of $52,760 noted later. Numerous cases illustrating the principle for which the executors contend are cited in 4 Dunnell, Minn. Dig. (2 ed. & Supp.) § 5602. Among them we find none requiring a holding different from that of the trial court. The beneficiaries who are the executors or substantially so did not present their claim until July 25, 1929. The date for filing claims was May 6, 1929. One might almost infer that owing to the unity of interests it was not thought important, or that the claim was regarded as barred.

Considerable attention is given in the briefs to the Red River Lumber Company, of which Walker was largely the owner, and to which he made loans and gave money. The large amount of the market company's claim was made up of an item of $135,554.90 which was owing by the lumber company to the market company and assumed by Walker on October 30, 1916, and charged on the books to him. This does not seem important on the real issue. It shows the relationship of Walker to the two companies and of the three among themselves. Nothing in connection therewith suggests that the debt was to be paid indefinitely in the future.

■ The executors claim that a payment was made which tolled the statute. Their reference is to the item of $52,760, entered on February 8, 1928, as a debit on the books of Walker and a credit on the books of the market company. It arose in this way: Property of the market company was condemned. Walker's share, based on his stock, would have been the amount stated. It is agreed that the credit to him was an error. The charge of February 8, 1928, was to correct it. The condemnation was in 1915. The entry of February 8 was not a payment. It was made so that the account would show true. It stated the history of the dealings of the company and Walker accurately by correcting an error in bookkeeping of 13 years before. The same bookkeeper kept the books of Walker, the market company, and the Red River Lumber Company, a Walker company. The correction was made after the six years had run. There is no question but that such a correction does not toll the statute. Erpelding v. Ludwig, 39 Minn. 518, 40

N. W. 829; Reeves v. Sawyer, 88 Minn. 218, 92 N. W. 962; 4 Dunnell, Minn. Dig. (2 ed.) § 5632, and cases cited. Other cases are in accord. See Pettus v. Rawls, 131 Ark. 125, 198 S. W. 874; Brown's Admr. v. Osborne, 136 Ky. 456, 124 S. W. 405; J. M. Arthur & Co. v. Burke, 83 Wash. 690, 145 P. 974; Am. Dig. Lim. of Act. § 159. The rule of extension by part payment is not greatly favored. Olson v. Dahl, 99 Minn. 433, 109 N. W. 1001, 8 L.R.A.(N.S.) 444, 116 A. S. R. 435, 9 Ann. Cas. 252; Anderson v. Nystrom, 103 Minn. 168, 114 N. W. 742, 13 L.R.A.(N.S.) 1141, 123 A. S. R. 320, 14 Ann. Cas. 54.

■ The charter of the market company expired. In 1926 the present company was formed and took over its assets. Walker signed a waiver of notice of the first meeting of the stockholders of the new company. At this meeting a resolution was passed reciting that the new corporation was formed to take over the assets of the other. He did not sign the minutes. So far as appears he did not directly or indirectly participate. The statute provides:

"No acknowledgment or promise shall be evidence of a new or continuing contract sufficient to take the case out of the operation of this chapter, unless the same is contained in some writing signed by the party to be charged thereby." G. S. 1923 (2 Mason, 1927) § 9204.

The signing of a waiver of notice of the meeting of stockholders, under the circumstances stated, did not toll the statute. See 4 Dunnell, Minn. Dig. (2 ed.) § 5623, et seq; Am. Dig. Lim. of Act. § 138, et seq.

■ The market company claims that the executors properly might and did waive the bar of the statute. The inheritance tax provides:

"A tax shall be and is hereby imposed upon any transfer of property, real, personal or mixed, or any interest therein * * * when the transfer is by will or by the intestate laws of this state." G. S. 1923 (1 Mason, 1927) § 2292.

The tax is computed upon the full value of the property subject to exemptions. § 2293. It is to "take effect at and upon the death

of the person from whom the transfer is made and shall be due and payable at the expiration of one year from such death, except as otherwise provided in this act." § 2294. It is the duty of the executor or administrator to deduct the tax and pay the same to the county treasurer. § 2295. The tax is a lien upon the property embraced in any inheritance, devise or gift, "and the person to whom such property is transferred and the administrators, executors and trustees of every estate embracing such property shall be personally liable for such tax, until its payment, to the extent of the value of such property." § 2297.

In the course of administration, the executors petitioned that the claim of the market company, in the sum of $147,303.90, be allowed. This was on July 25, 1929. It was allowed by the probate court on the next day at their instance. This amounted to a waiver as against the state if the executors were competent to waive. A statute much like that in other states provides:

"No claim or demand, or offset thereto, shall be allowed which was barred by the statute of limitations when filed." G. S. 1923 (2 Mason, 1927) § 8814.

With this statute in force, and the others from which we have quoted defining the nature of the succession tax, and perhaps without such a statute, it is improper to allow a claim barred by the statute of limitations and so defeat or diminish the succession tax otherwise collectible. We need not go far in the interpretation of § 8814. It cannot be held that the state did not have an interest, immediately upon Walker's death, of which the executors could not deprive it by petitioning for the allowance of a barred claim not otherwise enforceable and which would reduce the tax. The statute quoted has sometimes been held jurisdictional; and always, we think, effective to the extent we apply it here. Fontana Land Co. v. Laughlin, 199 Cal. 625, 250 P. 669, 48 A. L. R. 1308; In re Estate of Mertz, 241 Ill. App. 446; Branch v. Lambert, 103 Or. 423, 205 P. 995; Reay v. Heazelton, 128 Cal. 335, 338, 60 P. 977, 978; In re Mouillerat's Estate, 14 Mont. 245, 36 P. 185; In re Hoes, 183 App. Div. 38, 170 N. Y. S. 543; State ex rel. Scherber v. Probate

Court, 145 Minn. 344, 177 N. W. 354, 11 A. L. R. 242; In re Estate of Lindmeyer, 182 Minn. 607, 235 N. W. 377, is not opposed. And see Am. Dig. Ex. & Adm. § 213.

The company cites McKee's Estate, 25 Pa. Co. Ct. R. 589, 590, 10 Pa. Dist. R. 538, where the executors and parties interested did not desire to interpose a plea of the statute of limitations. The court said:

"We are of opinion that this operates only upon the residue left for distribution after all just, as well as legally enforceable, debts of the decedent are paid, provided the estate is made to pay the same. The creditors could interpose the statute of limitations were the estate insolvent, and the legatees may do so; but if they are willing to permit the estate to be distributed in such a way as to meet all just debts, although they might have the power to defeat some of them, we do not believe that the commonwealth has such standing as will permit it to compel the avoidance of such a just payment."

This is a forceful statement of a rule which might apply in a proper case. No other cases are cited involving a like question. We do not minimize the force of the reasoning. But under the explicit statements of the statute as to the character of the tax levied and the right of the state to it, and giving proper consideration to the prohibitions of § 8814, it cannot be held that the executors can deprive the state of the rights which the statute gives by assuming to waive the statute of limitations; or, as specifically done here, by petitioning for the allowance of the barred claim. It may be noted that the executors are the beneficiaries under Walker's will. There is no quarrel among them. Depending upon the terms of the will, some of the beneficiaries may gain and others lose by the allowance of the claim. In any event, the state will lose if the $147,303.90 claim is deducted before the computation of the tax. If the interests of the beneficiaries are pooled, there would be on the whole a gain to them. At the argument it was stated that some of the beneficiaries would gain and some lose; and that the total gain over losses would be some thousands of dollars.

When the new books were opened in 1928 the balances were transferred by the common bookkeeper of Walker and the two companies. He does not seem to have known of it. We cannot think the memorandum important upon the bar of the statute.

There is a claim that the executors are estopped to deny the debt. This claim has been examined without finding it so important as to invite discussion.

Judgment affirmed.

Wilson, C. J. (dissenting).

I dissent. The failure to file the claim before May 6, 1929, should not be used against the creditor or the estate. The transaction was much a family affair, but it was real. Being real and just, I cannot see why it should not be allowed even though it was with the idea of lowering the inheritance tax. To my notion the parties had a right to lower the inheritance tax so that it would be within the spirit of the statute and based upon the net value of the inheritance. Whether some individual gained by the transaction is not enough to condemn it.

The transaction involved at least a moral obligation. See In re Estate of Lindmeyer, 182 Minn. 607, 235 N. W. 377. It is the moral obligation that supports a new promise to pay. I assume from the opinion that in the absence of the inheritance tax law the conduct of the representatives of the estate would have effectually waived the statute of limitations. If so, I am unable to construe the inheritance tax law as meaning that the state's right to a tax on the net estate can take away the right of the estate to have all moral obligations paid. Here we have the anomalous, if not ridiculous, situation wherein the state claims and gets an inheritance tax while refusing to permit a deduction of a moral and just debt which is recognized by all interested persons. Certainly the legislature never so intended. It seems to me that the conclusion is unjust. When consent is given to the allowance of a claim it is not one barred by G. S. 1923 (2 Mason, 1927) § 8814. I think the holding in McKee's Estate, 25 Pa. Co. Ct. R. 589, 10 Pa. Dist. R. 538, cited in the opinion, and which apparently until now is not

opposed by any other judicial declaration, states a wholesome and correct conclusion. That case holds specifically that the inheritance tax "operates only upon the residue left for distribution after all just, as well as legally enforceable, debts of the decedent are paid, provided the estate is made to pay the same." Here the claim was certainly a "just" one.

