[Civ. No. 867.    Third Appellate District.—September 8, 1911.]

CHRIS NIELSON, Respondent, v. L. A. GROSS et al., Defendants; E. W. McGRAW, Appellant.

Mining Partnership—Sufficiency of Complaint as to Existence— Purpose not Alleged—Presumption—Understanding of Defendants.—Where a complaint in an action against a mining partnership alleges that the defendants were a mining partnership engaged in working the mine described, and operating the same as such, the mere failure to allege the statutory element that defendants

were working the mine "for the purpose of extracting the mineral therefrom," though it might have been more specific in that respect, does not render the complaint insufficient. The pleader could safely presume that the defendants would in the exercise of common sense easily understand that that was the purpose for which the mine was being operated.

ID.—EFFECT OF CESSATION OF WORK WITHOUT AGREEMENT TO RESUME—DISSOLUTION OF MINING PARTNERSHIP—TENANCY IN COMMON.—If the mining operations ceased without any agreement or understanding that the work was to be resumed in future, the effect of such cessation, without any such agreement or understanding, was to dissolve the mining partnership *ipso facto*, and thereafter the parties would be merely tenants in common, and as such neither party would have power to bind the other by contract. There would no longer be any confidential relation between them.

ID.—EFFECT OF CREATION AND CONTINUANCE OF PARTNERSHIP—PRESUMPTION—BURDEN OF PROOF TO SHOW DISSOLUTION.—From the original creation and continuance of the mining partnership the presumption arises of its continued existence, and the burden of proof is upon the defendants under a complaint averring its existence to show that the mining partnership had terminated before the alleged cause of action arose.

ID.—ABANDONMENT OF WORK ESSENTIAL TO DISSOLUTION—UNDERSTANDING, EXPRESS OR IMPLIED, TO RESUME WORK IN FUTURE.—There must be an abandonment of the work before it can be said that the mining partnership is at an end. If there was an understanding, express or implied, to resume work at a later date, the mere cessation of labor would not result as a dissolution thereof.

ID.—SUPPORT OF FINDINGS—PARTNERSHIP NOT DISSOLVED—LIABILITY OF PARTNERS FOR PLAINTIFF'S EMPLOYMENT.—It is held from a review of the evidence that there is sufficient evidence to support the findings that the mining partnership had not been dissolved when plaintiff was employed to take care of the mine during a temporary cessation of operations for the winter, without any notice of dissolution thereof, and with the intention of resuming operations; and that the mining partners were both liable for the debt created by the plaintiff's employment.

ID.—VARIANCE IN PROOF AS TO OTHER WORK DONE NOT ALLEGED—ABSENCE OF OBJECTION—THEORY OF TRIAL—WAIVER.—Where the evidence shows that plaintiff agreed to do other work not alleged in the complaint, and no objection was made as to any variance in the proof, it must be held that the case was tried upon the theory that the evidence was within the issues, and it is too late to question it upon appeal.

APPEAL from a judgment of the Superior Court of Nevada County. George L. Jones, Judge.

The facts are stated in the opinion of the court.

Fred Searls, and E. W. McGraw, for Appellant.

J. M. Fulweiler, for Respondent.

BURNETT, J.—The complaint is in two counts, and it is made the basis for the recovery from defendants, Gross and McGraw, as mining partners, for work and labor performed as a miner, by plaintiff, for the partnership for a period extending from the tenth day of February, 1908, to the twenty-eighth day of September, 1909. It was also sought to foreclose a laborer's lien on the property alleged to belong to L. D. Butt, but the court held that no lien existed, and the correctness of that decision is not questioned on the present appeal. A demurrer was interposed to the amended complaint, but it was overruled.

E. W. McGraw is the only defendant that answered. He admitted that the services were performed and were of the value alleged, and that by virtue of the statutes of the state Gross and he were mining partners, prior to October 26, 1908, and he offered to pay plaintiff for the amount due for his work to that date, but he denied that at any time subsequent to said October 26th defendant Gross and he were mining or other partners. He averred that on October 26, 1908, all work on the mines was definitely abandoned and the mining partnership ended. That thereafter no mining work was done on the property by Gross and McGraw, and that from and after October 26, 1908, plaintiff did no work as a miner, but was employed by defendant Gross as a caretaker, except that from June 29, 1909, to and including July 30, 1909, defendant McGraw employed men, and among them the plaintiff, in prospecting the mine in question, and that defendant McGraw paid plaintiff in full for said labor and that Gross had nothing whatever to do with that work. The court found in favor of plaintiff, and the appeal is from the judgment on a bill of exceptions.

The objection to the complaint is that the facts are insufficient to show the existence of a mining partnership. The following is the allegation in that respect: "That during all the times hereinafter mentioned the defendants L. A. Gross and E. W. McGraw were a mining partnership working and operating as such, certain quartz mines, mining claims and properties hereinafter more particularly described as one mine, near Carlisle in Meadow Lake Mining District in the county of Nevada, state of California." The statute defines a mining partnership as follows: "A mining partnership exists when two or more persons, who own or acquire a mining claim for the purpose of working it and extracting the mineral therefrom, actually engage in working the same." (Civ. Code, sec. 2511.) The point is that a mining partnership is the "creation of the statute," that when reliance is had upon "a right or status created by the statute," "the pleader must state all the facts necessary to bring the case within the statute" (*Dye* v. *Dye,* 11 Cal. 163), and that this requirement has not been observed by reason of the failure to allege that the defendants were working the mine for the purpose of "extracting the mineral therefrom." We feel confident, however, that appellant had no difficulty in understanding, from the allegations of the complaint, that the foregoing was the identical purpose for which the mine was being operated. The complaint might have been more specific in this respect, but the pleader could safely indulge the presumption that the defendants would use common sense in the construction of the complaint and would therefore easily reach the conclusion that the mine was being operated for the ordinary and general purpose for which such mines are developed.

There is another objection of appellant that is entitled to more serious consideration. It relates to the finding that the plaintiff was employed by the partnership. It is contended that "on October 26 or 28, 1908, the mining operations ceased and there was no agreement to resume them in the future. By such cessation of work without any agreement for resumption, the mining partnership between Gross and McGraw was *ipso facto* dissolved, and thereafter they were merely tenants in common and as such had no power to bind each other by contract. (*Wagoner* v. *Silva,* 139 Cal. 562, [73 Pac. 433].)" Many authorities are cited in support of the prin-

ciple. Among these the following quotations are made from Chancellor Kent and note 7, page 228, volume 22, American and English Encyclopedia of Law: "If a partnership is formed for a single purpose or transaction, it ceases as soon as the business is completed, and nothing can be more natural or reasonable than the rule of the civil law that the partnership in any business should cease when there was an end put to the business itself." (3 Kent's Commentaries, 14th ed., p. 71.) Said note is as follows: "Where the actual working of the mine has ceased the relation of the co-owners is that of tenants in common, and not that of partners, and there is no longer any confidential relation between them. (*Harris* v. *Lloyd*, 11 Mont. 390, [28 Am. St. Rep. 475, 28 Pac. 736].)"

But, granting that appellant has stated the rule with substantial accuracy, it does not apply, as we view it, to a temporary suspension of the operation of the mine. There must be an abandonment of the work before it can be said that the partnership is at an end. If there was an understanding, express or implied, to resume at a later date, the mere cessation of labor would not result as a dissolution. This, as we understand it, is conceded by appellant. While he speaks of an agreement as necessary to continue the partnership, he does not contend that it may not be implied as well as ex-. pressed. And whatever may be required to prevent dissolution on the cessation of labor, the burden of proof, it would seem, must be borne by appellant to show that the partnership was terminated. This follows from the presumption arising from the admitted fact that the partnership existed prior to October 26, 1908. It would be presumed to continue unless the contrary were shown. While it may be said that there was some evidence that the work of joint operation of the mine was at an end, the court was not bound to hold that this evidence overcame the said presumption. But conceding that plaintiff was required to prove that the parties intended to resume operations, then, of course, this could be proven by direct or indirect evidence or both, and it cannot be said that such inference finds no valid support in the record. Indeed, some of the circumstances detailed by the witnesses are inconsistent with the view that the work of development had been abandoned by the partnership. It is at least a fair

inference that for a long time subsequent to October 28, 1908, appellant and Gross intended to go on with the work as before. We shall not undertake a recital of all the evidence tending to show a continuance of the partnership, but will refer to some of the circumstances seemingly justifying the court's conclusion. In the first place, it is perfectly clear that they had not abandoned the mine. Appellant admits that in the spring and summer of 1909 he spent $1,000 for work and prospecting in the mine. This is entirely inconsistent with the theory of a previous abandonment of the property. There is no direct evidence why they discontinued operations on October 26 or 28, 1908, but it is fair to infer that it was on account of the approach of winter. There is nothing to show that the partnership operation was not profitable and agreeable to both parties. It was, therefore, a reasonable conclusion that they intended to continue the work as they had begun it.

Again, no notice was given of any dissolution of partnership. This is a circumstance of some importance, especially in view of the probability of such claims as the one before us. The evidence shows that appellant had notice of the work being done by plaintiff and, upon the theory that the partnership had been dissolved, appellant's silence is hardly consistent with fair dealing and ordinary business prudence. The fact of the employment of plaintiff to take care of the mine also, as already indicated, signified a purpose to resume operations. What was done may have been for the purpose, it is true, of effecting a sale of the property, but these circumstances undoubtedly lend support to the view of the trial court that the cessation of operations by the partnership was not intended to be final.

Some additional evidence that the parties intended to resume is also found in the testimony of plaintiff and of Mr. Gross. The former testified that "when Mr. Gross left (October 28, 1908), he wanted me to take care of the property. He told me I would get my money inside of ten days; they will settle everything up and he will come back next spring; he left me to take care of the mine. I thought all the time Gross would be back in 1909 to resume work." Prior to said October 28th, it may be said, the mine was in charge of said Gross. Furthermore, he testified that Mahon,

when he shut down on the 1st of August, said to him: "Chris, you are on Mr. McGraw's pay-roll now." Gross testified that at the time he employed plaintiff after they had suspended operations, "McGraw was still concerned with me in the operation and control of the properties," and that there was no dissolution of the partnership arrangement. Without further consideration, we think it must be held that there is substantial evidence to support the said finding.

It is true that the work done by plaintiff for which he seeks recovery was not directly for the purpose of extracting mineral from the mine, but it seems so closely connected therewith as to bring it within "the scope of the objects" of the partnership. Gross testified that "When I left Nielson in charge my instruction to him was to take charge of the property and protect it; see to the shoveling off of the roofs and preserving of the buildings in winter and protect the general personal property around camp and keep people from carrying them off; that was absolutely necessary." He states that these buildings were necessary for the development of the property and he explained how important it was that this work should be done. The plaintiff's testimony shows that he carried out his instructions fully and also cut a large quantity of wood for the camp. Strictly speaking, this work was probably not that of a miner, and in this respect there was a variance between the proof and the allegations of the complaint, but no objection was made on that ground in the court below, and it must be held that the case was tried upon the theory that the evidence was within the issues, and it is now too late to question it.

The foregoing seem to be the only points requiring specific attention. We think the judgment should be affirmed, and it is so ordered.

Chipman, P. J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on November 6, 1911.