BIELENBERG, SPECIAL ADMINISTRATOR, APPELLANT, v. HIGGINS ET AL., RESPONDENTS.

(No. 6,456.)

(Submitted April 5, 1929.   Decided May 13, 1929.)

[277 Pac. 631.]

58

*Messrs. Loble & Adair* and *Mr. C. E. Pew,* for Appellant, submitted an original and a reply brief; *Mr. Pew* argued the cause orally.

*Mr. W. E. Keeley* and *Miss Virginia McGuire,* for Respondent. *W. I. Higgins,* submitted a brief; *Mr. Keeley* argued the cause orally.

*Messrs. Kremer, Sanders & Kremer,* for Defendant Metals Bank & Trust Company.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

This is an appeal from a judgment entered in favor of defendants after demurrers to plaintiff's amended complaint were sustained.

The material allegations of the amended complaint are as follows: That Nicholas J. Bielenberg and W. I. Higgins each owned an undivided one-half interest in a group of mining claims in Madison county, and during and prior to the year 1917 they were engaged in working the claims under the partnership name of Bielenberg & Higgins; that no mining operations have been conducted by the partnership since 1917, but the partners have been engaged in efforts to sell the property and to liquidate the partnership liabilities; that prior to November 23, 1917, the partnership became indebted to Larabie Bros., Bankers, at Deer Lodge, on account of the mining

operations, and on that date the partnership, and the individual members thereof, executed a demand note to Larabie Bros., Bankers, in the sum of $111,000; that on May 21, 1918, Nicholas J. Bielenberg executed and delivered his demand note to the same bank for $15,000 to evidence a loan then made for the use of the partnership; that on October 17, 1917, Higgins made and delivered his demand note to the same bank in the sum of $29,000 to evidence an indebtedness then owing by him individually to the bank, and that Nicholas J. Bielenberg signed that note as accommodation maker; that on November 8, 1919, Nicholas J. Bielenberg gave a deed to a certain described lot in Butte, with improvements, to Larabie Bros., Bankers; that the deed was by the parties intended as a mortgage to secure the payment of the notes above mentioned; that on December 15, 1920, Nicholas J. Bielenberg and W. I. Higgins entered into an agreement, as follows:

"This agreement entered into this 15th day of Dec. 1920, between N. J. Bielenberg and W. I. Higgins is to the following effect. That for & in consideration of $1.00 in hand paid and other valuable consideration the receipt of which is hereby acknowledged that the said N. J. Bielenberg & W. I. Higgins do hereby agree to sell & convey the Bear Gulch property for a sum sufficient to pay off the indebtedness of Bielenberg & Higgins & W. I. Higgins, Claude N. Bielenberg, W. B. Rodgers, Bert C. Paige & S. P. Wilson and any and all moneys in excess of an amount sufficient to pay off the aforenamed obligations for which the property is sold is to be divided share & share alike between the said W. I. Higgins & N. J. Bielenberg.

"Dated this 15th day of Dec. 1920.

"Witness: —— [Signed].

"W. I. HIGGINS.
"N. J. BIELENBERG.

"2. The purpose of this agreement is that the property shall be sold for enough to liquidate the mortgage given by N. J. Bielenberg to Larabie Bros. to secure the indebtedness of Bielenberg & Higgins & W. I. Higgins the approximate amount

of said indebtedness being $125,000.00 and also any interest that may accrue on said mortgage from date until date of sale final settlement. The amount of the indebtedness of Claude N. Bielenberg above referred to is $6,000.00 with interest at 8% from date of issuance of his check to Bielenberg & Higgins which was about 1916 to 1918.

"Witness           "ALMA M. HIGGINS.

"CLAUDE N. BIELENBERG."

That the "Bear Gulch property" referred to in the agreement was mining property of the partnership; the indebtedness of Bielenberg and Higgins was that represented by the notes of $111,000 and $15,000, respectively; the indebtedness of W. I. Higgins was that represented by the $29,000 note; the Claude N. Bielenberg indebtedness was the sum of $6,000 advanced by him to the partnership in 1917; and the indebtedness of W. B. Rodgers, Bert G. Paige, and S. P. Wilson has all been paid with the exception of a balance of $500 due to the estate of W. B. Rodgers, deceased; that the mortgage therein referred to was the mortgage upon the Butte property to Larabie Bros., Bankers, in the form of a deed; that the indebtedness above mentioned constituted all the then existing indebtedness of the partnership except sums theretofore advanced to the partnership by N. J. Bielenberg; that the agreement constituted a settlement of the affairs of the partnership as between the partners, and was so acted upon by them; that after the making of the agreement, in order to prevent a foreclosure of the mortgage and the sale of the mining property, N. J. Bielenberg made payments on behalf of the partnership upon the indebtedness by paying the $15,000 note, with $3,776 interest, on February 2, 1921, and by paying on the $111,000 note $56,224 on February 2, 1921, $12,000 on February 17, 1921, $3,938.66 on March 23, 1921, and $1,139 on January 22, 1924; that in 1923 Larabie Bros., Bankers, commenced action against the partnership and N. J. Bielenberg and W. I. Higgins personally, and obtained a judgment for the foreclosure of the mortgage on the Butte property; that, in order to prevent a

sale of the property covered by the judgment in that action, N. J. Bielenberg satisfied and extinguished the judgment, by the payment of sums in excess of $75,000; that none of the money paid out by him for the partnership has been repaid; that none of the money due to him from W. I. Higgins on account of the $29,000 note and judgment entered thereon has been repaid; that on July 6, 1927, N. J. Bielenberg died and Claude N. Bielenberg was by order of court appointed, and thereafter qualified, as special administrator of his estate and is the holder of said claims for the use and benefit of the estate; that on September 23, 1925, in pursuance of the agreement of December 15, 1920, N. J. Bielenberg and W. I. Higgins and wife executed and delivered to Mohave Mining Company a lease and option upon the partnership mining property, and placed a deed in escrow with the defendant bank conveying the property to. the Mohave Mining Company, to be delivered to it upon making the payments in accordance with the lease and option; that under the lease and option the moneys accruing thereunder are required to be paid to the defendant bank; that in violation of the agreement of December 15, 1920, the defendant Higgins has withdrawn from the defendant bank one-half of the moneys paid to it by the Mohave Mining Company; that said sums have not been applied upon the partnership indebtedness, but have been appropriated by Higgins to his own use; that defendant Higgins is insolvent except as to his interest in the mining property here involved; that the mining property referred to constitutes the only property of the partnership known to plaintiff; that the sums advanced by deceased to the mining partnership constitute a lien upon the interest of W. I. Higgins in the mining property; and that this action is necessary to preserve the estate of deceased.

The prayer of the complaint is for judgment for one-half of the sums advanced by deceased for the partnership, together with interest; that the debts of the partnership to third persons be paid out of the proceeds of the sale of the mining property; that plaintiff be decreed to have a lien upon the

interest of defendant Higgins in the mining property on account of the one-half of the advances made by N. J. Bielenberg for the partnership; for foreclosure of the lien subject to the rights of the Mohave Mining Company; that defendant bank be directed to apply all moneys received from the lease and option to the payment of the indebtedness; and that defendant Higgins be required to pay plaintiff all sums of money withdrawn by him from the defendant bank on account of moneys paid to the bank by the Mohave Mining Company.

To the amended complaint the defendant bank interposed a general demurrer, and the defendant Higgins interposed a general and special demurrer. Both defendants were sustained and judgment rendered for defendants. In the brief of █ plaintiff no argument is presented questioning the correctness of the ruling sustaining the demurrer of the defendant bank, and we have treated this assignment of error as waived. The correctness of the court's order sustaining the demurrer of the defendant Higgins is the only question presented on this appeal.

1. The first ground of the demurrer of the defendant Higgins is that there is another action pending between plaintiff and defendant Higgins for the same cause. Since it does not appear from the amended complaint that there is another action pending between the same parties for the same cause, this ground of the demurrer is without merit. (*Marcellus* v. *Wright,* 51 Mont. 559, 154 Pac. 714.)

2. The second ground of the demurrer is that the amended complaint does not state facts sufficient to constitute a cause of action. Defendant contends that, if any cause of action ever existed, it is barred by limitations, and that this appears from the complaint and can be raised by demurrer. With this we do not agree.

Section 9065, Revised Codes 1921, provides that "the objection that the action was not commenced within the time limited can be taken only by answer." That this objection can be raised only by answer has become the settled law of

this state (*Parchen* v. *Chessman,* 49 Mont. 326, Ann. Cas. 1916A, 681, 142 Pac. 631, 146 Pac. 469; *State ex rel. Kolbow* v. *District Court,* 38 Mont. 415, 100 Pac. 207; *Grogan* v. *Valley Trading Co.,* 30 Mont. 229, 76 Pac. 211), and the defendant must sustain the burden of proving it as alleged (*Williams* v. *Hilger,* 77 Mont. 399, 251 Pac. 524).

3. The next contention of defendant is that one partner ▇▇ cannot sue his copartner except by a bill in equity for accounting or dissolution. That this is the general rule can admit of no doubt; but that there are exceptions to the rule is equally certain. One exception is where the partners have agreed upon a settlement among themselves and thus rendered an accounting unnecessary. (*Riddell* v. *Ramsey,* 31 Mont. 386, 78 Pac. 597; *Boehme* v. *Fitzgerald,* 43 Mont. 226, 115 Pac. 413.) Another is where the partnership is limited to a single venture, or when but a single item remains unadjusted. (*Malano* v. *Bressan,* 76 Mont. 366, 245 Pac. 871.)

The supreme court of Kansas, in *Frith* v. *Thomson,* 103 Kan. 395, L. R. A. 1918F, 1123, 173 Pac. 915, applied this exception to the general rule, saying: "If the suit involved the adjustment of complicated accounts in which an ordinary legal remedy was inadequate an accounting might have been warranted, but there is no necessity of resorting to an accounting where full inquiry may be made and justice secured through the ordinary legal remedies. Here there was but a single adventure; there was no complexity of accounts; no difficulty for a jury to understand and determine the questions involved; the relationship had been terminated; and hence there was no occasion for employing the methods of investigation peculiar to courts in equity. It has been determined that where a single partnership transaction is involved, an accounting between the parties is not necessary. (*Pettingill* v. *Jones,* 28 Kan. 749.) In another case it was ruled that when the dealings between partners embraced but a few items of transactions and were not such as to make an adjustment of their dealings difficult, the ordinary legal remedies were adequate, and resort

to equity was unnecessary. (*Clarke* v. *Mills*, 36 Kan. 393, 13 Pac. 569.)'' To the same effect are the following: 30 Cyc. 464; Mechem's Elements of Partnership, 2d ed., sec. 205; *Reiser* v. *Johnston*, 65 Okl. 307, L. R. A. 1918A, 924, 166 Pac. 723; *Anderson* v. *Whitener*, 127 Okl. 284, 261 Pac. 156; *Mills* v. *Gray*, 50 Utah, 224, 167 Pac. 358; *Dorwart* v. *Ball*, 71 Neb. 173, 8 Ann. Cas. 766, 98 N. W. 652; *Wheeler* v. *Arnold*, 30 Mich. 304; *Welch* v. *Miller*, 210 Pa. 204, 59 Atl. 1065; *Ledford* v. *Emerson*, 140 N. C. 288, 6 Ann. Cas. 107, 4 L. R. A. (n. s.) 130, 52 S. E. 641; *Mason* v. *Sieglitz*, 22 Colo. 320, 44 Pac. 588; *Fry* v. *Potter*, 12 R. I. 542; *Chipley* v. *Smith* (Tex. Com. App.), 292 S. W. 209; *Peck* v. *Powell* (Tex. Civ. App.), 259 S. W. 640; *Pugh* v. *Newbern*, 193 N. C. 258, 136 S. E. 707; *Himmelberger* v. *Central State Bank*, 200 Iowa, 585, 203 N. W. 303.

This case, in some of its aspects, is similar to that of *Jepsen* v. *Beck*, 78 Cal. 540, 21 Pac. 184, where the court said: ''The rule is well settled that one partner cannot maintain an action against another, to recover an amount claimed by him by reason of partnership transactions, until there has been a final settlement of the affairs of the concern by discharging its liabilities, collecting its assets, and definitely ascertaining 'the surplus to a share of which he is entitled. (Bates, Partn. 849.) The reasons for this rule have been variously stated, but this case, as we view it, is not within any of them. The complaint shows that there are no outstanding demands against the partnership, and no outstanding debts to be collected, or that can be collected, so that the judgment to be rendered will be a final settlement between the partners. Under our system of procedure the defendant might have had in this action, had he desired, a discovery and accounting, which certainly obviates the principal objection to the maintenance of such an action in a case like this. The demurrer was properly overruled.''

Here the complaint alleges in substance that on December 15, 1920, the partners agreed that thereafter their activities in relation to their mining property should be limited to the

single purpose of selling the property and paying the mortgage given by N. J. Bielenberg to the Larabie Bros.' bank, representing an indebtedness of approximately $125,000, and certain other indebtedness mentioned in the agreement. Furthermore, the complaint alleges that this indebtedness was the only existing indebtedness of the partnership at that time, except sums theretofore advanced to the partnership by Nicholas J. Bielenberg, and that the agreement constituted a settlement of the affairs of the partnership and was so acted upon by Nicholas J. Bielenberg and the defendant Higgins. These allegations are sufficient to bring the case within the well-established exception to the general rule that one partner may not sue his copartner in an action at law.

4. It is next contended by defendant that under section 10261, Revised Codes, 1921, the surviving partner has the right to the possession of all of the partnership property and to settle its business, and that partnership assets form no part of the individual estate of the deceased partner until the partnership affairs have been wound up by the survivor. That statute applies to general trading partnerships and not to mining partnerships. Here the firm of Bielenberg & Higgins was a mining partnership prior to 1917. (Sec. 8050, Rev. Codes 1921.)

While mining partnerships are governed by many of the rules relating to ordinary trading partnerships, there are some important differences between them: "The distinctive features of mining partnerships are—(1) the absence of a *delectus personae,* which characterizes ordinary partnerships; (2) neither death nor bankruptcy of one of the members dissolves it; (3) a sale of an interest in a mining partnership by a partner does not dissolve the partnership; such stranger by his purchase becomes a partner. Hence its membership is changeable and uncertain. This naturally flows from the absence of the *delectus personae.*" (Lindley on Mines, 3d ed., sec. 796.) "In a case of the death of a mining partner, the survivor has no right as such to take control of the property, this right ap-

plying only where the *delectus personae* exists.'' (17 Cal. Jur., p. 447.)

The rule applicable here was stated by this court in *Boehme* v. *Fitzgerald,* 43 Mont. 226, 115 Pac. 413, as follows: ''If they were mining partners, the death of Boehme did not operate to dissolve the partnership, and his estate succeeded to his interest, and occupies the same relative position that Boehme would occupy if alive.''

When the partners ceased to actually engage in working the ▮ property with no intention of again resuming operations, they worked a dissolution of the partnership. (*Harris* v. *Lloyd,* 11 Mont. 390, 28 Am. St. Rep. 475, 28 Pac. 736; *Nielson* v. *Gross,* 17 Cal. App. 74, 118 Pac. 725.) But the dissolution of the partnership could not operate to defeat rights which accrued while the partnership existed. (*Lawrence* v. *Robinson,* 4 Colo. 567.)

Under section 8053, Revised Codes 1921: ''Each member of ▮ a mining partnership has a lien on the partnership property for the debts due the creditors thereof, and for money advanced by him for its uses.'' The lien is given for the purpose of enabling a partner to collect from his copartners their proportion of an indebtedness which he has been compelled to pay. (*Stuart* v. *Adams,* 89 Cal. 367, 26 Pac. 970.)

The complaint here states facts sufficient to constitute a cause of action against the defendant Higgins for the purpose of fixing the amount of the lien for advances made by Nicholas J. Bielenberg in discharge of the partnership obligations, and for the foreclosure of the lien, subject to the rights of the Mohave Mining Company, and for requiring the defendant Higgins to pay to plaintiff whatever has been withdrawn by him from the defendant bank on account of the moneys paid to the bank by the Mohave Mining Company, to the end that the proceeds derived from the sale of the property may be applied on the partnership debts pursuant to the agreement of December 15, 1920. We think that agreement on its face contemplated the payment of the indebtedness therein referred to

before either partner could withdraw any part of the proceeds for his own use. For a case having many similar features, where the complaint was held sufficient, see *Gilbert* v. *Fontaine* (C. C. A), 22 Fed. (2d) 657.

5. Another ground of the demurrer is that plaintiff has not ▮ the legal capacity to sue. It is the contention of the defendant that a special administrator may not bring an action without obtaining permission from the court. The cases of *Gow* v. *Cascade Silver Mines & Mills Co.*, 66 Mont. 488, 213 Pac. 1092, and *Ruiz* v. *Santa Barbara Gas & Elec. Co.*, 164 Cal. 188, 128 Pac. 330, are relied upon by counsel as supporting this contention. The *Gow Case* related to a power not specifically enumerated in the statute relating to the powers of a special administrator, and hence does not support the conclusion contended for. In the *Ruiz Case* language was employed by the court that tends to support this conclusion, but the precise question does not appear to have been before the court, since in that case the order appointing the special administrator specifically authorized the bringing of the action.

Section 10111, Revised Codes 1921, provides: "The special administrator must collect and preserve for the executor or administrator all the goods, chattels, debts, and effects of the decedent, all incomes, rents, issues, and profits, claims, and demands of the estate; must take charge and management of, enter upon, and preserve from damage, waste, and injury, the real estate; and for any such and all necessary purposes may commence and maintain or defend suits and other legal proceedings as an administrator. ❋ ❋ ❋ "

In *Forde* v. *Exempt Fire Co.*, 50 Cal. 299, the court, in speaking of the California statute, which was then identical with our section 10111, said: "By section 1415 [Code Civ. Proc.], a special administrator may, for certain enumerated purposes, and 'for all necessary purposes,' maintain actions and other legal proceedings, 'as an administrator.' By 'necessary purposes' is meant purposes having in view the enforcement of the substantial rights of parties entitled to the benefits

of the estate, or to have its assets applied to the satisfaction of their established claims. The duty to maintain such actions is imposed upon the administrator as being necessary and in our opinion a similar duty is cast by section 1415 upon a special administrator."

By section 10111 it is clearly contemplated that a special administrator may commence actions for "all necessary purposes" as an administrator. A general administrator has authority to commence an action such as this. (Sec. 10258, Rev. Codes 1921.) By section 10111, the same power is conferred upon a special administrator.

The general rule in other jurisdictions is that a special administrator has authority to bring actions for the protection or preservation of the estate (23 C. J. 1182; *Miller* v. *Superior Court*, 59 Cal. App. 334, 210 Pac. 832; *Miller* v. *Superior Court*, 59 Cal. App. 392, 210 Pac. 835), and may do so without securing an order of the probate court (*Delafield* v. *Parish*, 4 Bradf. Sur. (N. Y.) 24, 26).

The complaint is not open to the objection that plaintiff has not the legal capacity to sue.

6. We have examined the other grounds of demurrer and find them without merit. The court erred in sustaining the demurrer of the defendant Higgins to the amended complaint and in entering judgment for the defendant Higgins.

The judgment is reversed, and the cause remanded, with directions to set aside the order sustaining, and to enter an order overruling, the demurrer of the defendant Higgins.

Mr. Chief Justice Callaway and Associate Justices Matthews, Galen and Ford concur.

Rehearing denied June 4, 1929.