PINCUS, Respondent, v. DAVIS, Executor, Appellant.

(No. 7,087.)

(Submitted October 11, 1933. Decided November 13, 1933.)

[26 Pac. (2d) 986.]

376

*Mr. J. A. Poore,* for Appellant, submitted a brief and argued the cause orally.

*Mr. H. L. Maury,* for Respondent, submitted a brief and argued the cause orally.

MR. JUSTICE ANDERSON delivered the opinion of the court.

Plaintiff brought this action against the executor of his deceased brother's estate to recover upon a claim which had been disallowed by the defendant.

Adolph Pincus died on January 17, 1930. His will was admitted to probate. The first notice to creditors was published on March 1, 1930, requiring claims to be presented within ten months thereafter. Within the time limit of this notice plaintiff presented his claim to the defendant, who disallowed it on December 9, 1930.

Plaintiff alleged in his complaint that in the year 1916 he and his brother entered into a copartnership for the purchase and sale of personal property, store fixtures and particularly jewelry. Each of the parties was to furnish his services in promoting the business of the firm; they did embark on a num-

378

ber of adventures. Both the complaint and the claim filed allege certain particular transactions into which these parties entered, as follows: (a) The purchase in 1916 from one Mose Linz of a certain lot of jewelry pledged to him by one Creighton Largey for $1,450, and sold by Adolph Pincus to the Bonner Manufacturing Company for $8,000, realizing a profit of $6,550, of which plaintiff claimed one-half, or $3,275. (b) The purchase in 1916 from Creighton Largey of a diamond for $400, thereafter sold to James Higgins for $1,360, realizing a profit of $960, of which plaintiff claims one-half, or $480. (c) The purchase of five units of Burke Divide stock for $500, of which two units were sold for $200, plaintiff claiming one-half of the dividends received on the stock and to be the owner of a one-half interest in the three shares of stock remaining. (d) The purchase and sale, in 1917, of a soda fountain at a profit of $3,100, of which the plaintiff claims one-half, or $1,350. (e) The purchase of diamonds from a Mrs. Gruell for the sum of $980, and the sale of the same for $1,600, at a profit of $620, of which plaintiff claims one-half, or $310. (f) The purchase, in the year 1927, of a diamond from one Jack Susser for $1,550, and the sale of the same for $7,000, realizing a profit of $5,450, of which the plaintiff claims one-half, or $2,725.

The defendant by his answer denied all the allegations of plaintiff's complaint, except that he admitted the death of Adolph Pincus, his appointment as executor, and the presentation and disallowance of the claim.

The plaintiff in his claim and complaint admitted that the sum of $310 had been paid on the various sums alleged by him to be due as the result of the above transactions.

The case was tried before the Honorable William E. Carroll, one of the judges of the district court of Silver Bow county, sitting with a jury; a general verdict was returned in favor of plaintiff for the sum of $8,025, that no payments had been made except those admitted, and that the plaintiff was the owner of an undivided one-half interest in the three units of the Burke Divide stock. Judgment was entered in accordance with the verdict on July 26, 1932, directing that the sum

therein found to be due be paid by the executor in due course of administration of the estate.

On August 2, 1932, defendant served and filed his notice of intention to move for a new trial. The following day an affidavit of disqualification in the statutory form (subd. 4, sec. 1, Chap. 93, Laws of 1927) was filed against Judge Carroll, who on that day transferred the case to department No. 1 of that court, "for the hearing of all further proceedings herein, the Hon. Frank L. Riley, Judge presiding." Thereafter, on August 9, a like affidavit of disqualification was filed by the plaintiff against Judge Riley, who on the following day made an order calling in the Honorable Benjamin E. Berg, judge of the sixth judicial district, to hear defendant's motion for a new trial. Thereafter Judge Berg accepted the invitation of Judge Riley, heard the motion for a new trial, and made an order denying the motion upon condition that the plaintiff would file within six days a remittitur of the items listed as "c" and "d"; such remittitur was filed within time, and Judge Berg thereafter settled the bill of exceptions containing the testimony and the proceedings occurring at the trial of the cause before Judge Carroll. Other bills of exceptions were also settled including therein other proceedings in the case not occurring at the trial. The appeal is from the judgment so modified.

Plaintiff has filed in this court a motion to strike from the record the entire bill of exceptions settled by Judge Berg, which includes all the proceedings occurring at the trial before Judge Carroll. By this motion it is asserted that the bill of exceptions should be stricken for two reasons, which may be summarized as follows: (1) That upon the disqualification of Judge Riley, he was without jurisdiction to call in Judge Berg, and therefore Judge Berg was without jurisdiction to hear the motion for new trial or to settle the bill of exceptions. (2) That the cause was an equity case and, since the notice of motion for a new trial included none of the grounds upon which such motion may be granted under the statute in an equity case, therefore all the new trial proceedings subsequently had before Judge Berg were

·invalid, and consequently Judge Berg was without jurisdiction to settle the bill of exceptions against which this attack is made. It becomes necessary, therefore, for us to consider certain elementary principles in passing upon the first ground of plaintiff's motion, as set forth above.

Any judge of the district court may hold court for any other ▮▮▮ district judge. (Const., Art. VIII, sec. 12.) ''If one district judge invites another to hold court for him, and the invitation is accepted, the invited judge, when he appears, and while he presides, has all the authority of the local judge.'' (*Rowan* v. *Gazette Printing Co.*, 69 Mont. 170, 220 Pac. 1104, 1106; sec. 9098, Rev. Codes 1921; *Farleigh* v. *Kelly,* 24 Mont. 369, 62 Pac. 495, 685.) ''When a judge is disqualified for imputed bias he is without authority to act further in the action in which he is disqualified, except to arrange the calendar, regulate the order of business, call in another judge, or transfer the cause, if a transfer is proper.'' (*Rowan* v. *Gazette Printing Co.,* supra; see subd. 4, sec. 1, Chap. 93, Laws of 1927.) If there be more than one judge in the district, the one first disqualified in a given cause must call in another judge of the same district. (Subd. 4, supra.) Upon the second or any subsequent disqualification of a judge in the cause, a district judge of another judicial district of the state must be called in to proceed, or the cause transferred to a district judge of another judicial district of the state. (Subd. 4, sec. 1, supra.) Where the business of the court is distributed into departments presided over by different judges, the change of judge is usually effected by a transfer to another department. (*State ex rel. Goodman* v. *District Court,* 46 Mont. 492, 128 Pac. 913.)

None of the bills of exceptions contained in this record contain the rules of court in Silver Bow county. This court cannot take judicial notice of the existence of the rules of the various district courts. (*Middle States Oil Corp.* v. *Tanner-Jones Drilling Co.,* 73 Mont. 180, 235 Pac. 770.) When Judge Carroll was disqualified, he still retained jurisdiction to invite another judge and to arrange his calendar. He exercised this jurisdiction by transferring the case to Judge Riley's depart-

ment, which was a proper method, within the statute, for inviting in a judge of the same court. Upon the disqualification of Judge Riley, he still retained jurisdiction to call in an outside judge and to arrange the order of his trial calendar.

Since the record fails to show that any rules of court have been adopted in the second judicial district for the apportionment of the business between the judges of that court, in the absence of such rules each of the judges had all the power and authority concerning any business in the district that is conferred upon any judge in this state. (*Rowan* v. *Gazette Printing Co.*, supra.) Furthermore, Judge Carroll transferred the case to Judge Riley's department for all further hearings. Therefore Judge Riley was within his jurisdiction in calling in Judge Berg.

If we assume for the sake of this discussion that counsel for the plaintiff is correct in his assertion that this was an equity case, a question upon which it appears from the briefs and the oral argument there is serious controversy, and as to the correctness of the assertion of counsel for plaintiff we express no opinion, we will now give consideration to the second ground of plaintiff's motion, as stated above.

The causes for the vacation of a verdict and the granting of a new trial are enumerated in section 9397, Revised Codes 1921. Section 9396, Id., provides that "no new trial shall be granted in equity cases * * * except on the grounds mentioned in the first, third, and fourth subdivisions of section 9397."

The notice of intention to move for a new trial served and filed in this cause did not contain any of the grounds enumerated in any of the three subdivisions mentioned in section 9396, supra. Section 9390 provides that "whenever a motion for a new trial is pending, no bill of exceptions need be prepared or settled until the decision of the court upon motion for a new trial has been rendered." The only limitation upon the power of the court contained in section 9396 is upon the power to grant a motion for new trial in an equity case. Nowhere in the Codes do we find any prohibition against a party moving for a new trial, nor upon the power of the court to hear such motion

upon the grounds enumerated in section 9397. We find no exception in the statute with reference to the settlement of bills of exceptions in cases where a motion for new trial is pending. The language of that statute, section 9390, is all-inclusive. Therefore, when a motion for new trial is made in an equity case upon grounds enumerated in section 9397, but which are not included within the provisions of section 9396, the only penalty provided by statute is the denial of the motion.

"When, as here, there has been a change of judge between the time the motion for a new trial was made and the time when a hearing was had on the same, the judge who heard the motion is the only one who is in position to certify what was before him and what he considered as the basis of his ruling." (*Russell* v. *Sunburst Refining Co.*, 83 Mont. 452, 462, 272 Pac. 998, 1003.)

The motion for a new trial as presented was based on the minutes of the court, and in passing upon the same it was the duty of the judge hearing the motion to consider the pleadings, records, minute entries and the evidence offered, and all the proceedings had at the trial, and on the entire case there presented to determine the motion. (*Russell* v. *Sunburst Refining Co.*, supra.)

It is accordingly ordered that the motion to strike the bill of exceptions be, and the same is hereby, denied.

On the trial of this cause the plaintiff was permitted to testify as to direct communications between himself and his deceased brother relative to their various transactions. Defendant made timely objection to this line of testimony upon the ground that it was inadmissible under the provisions of subdivision 3 of section 10535, Revised Codes 1921, which objection was by the court overruled. This ruling is assigned as error.

Prior to the ruling of the court certain testimony had been received for the purpose of establishing a foundation for its admission. One Jack Susser testified as to the sale of the diamond by himself in 1927, and, with reference to a conversation he then had with the deceased at the time of this sale,

stated that during the progress of the bargaining and with respect to the price, Adolph Pincus said: "If I make any profit I have to give it to my partner, half, to Mr. Pincus, Jake Pincus, or if any profit be made I will have to pay him half." This conversation occurred in the presence of plaintiff. Susser further testified that he originally negotiated with Jake Pincus for the sale of the diamond which he sold for $1,550 paid him by Adolph Pincus. This testimony was with reference to the diamond ring mentioned in item (f), as set forth in the claim and also the complaint.

Abe Delovage, a resident of Los Angeles, California, testified that he bought this diamond from Adolph Pincus for the sum of $7,500. Fred Young, a jeweler in Butte, testified that the Pincus brothers brought this diamond to his place, that he set it in a mounting, and that Adolph Pincus secured it from him and took it to California.

James E. Higgins testified that he was desirous of purchasing the diamond mentioned in the claim and complaint as item (b), and interviewed Jake Pincus with reference to that subject; that the latter finally sold him the diamond, and that he paid for it in two payments, one of which was made to Jake and the other to Adolph Pincus.

Witness Young, mentioned above, testified, with reference to the diamond mentioned in item (e) of the claim and complaint, that he was familiar with the Gruell diamond and had a conversation with Jake about his purchasing it, and that later Adolph Pincus brought the stone to him to be set.

Jacob Pincus also testified as a part of this foundation that he had no written memorandum signed by his deceased brother with reference to any of these claims; that all of his books had been lost or misplaced for a number of years; that at the time the various transactions were had between him and his brother, Adolph made no entries in any books; that he was frequently in the office and place of business of his brother during the 15-year period before the trial; and in conclusion on this subject testified that he knew positively his brother did not keep books.

Lyman Harley, who was in the employ of Jacob Pincus as a bookkeeper at the time he was keeping books, testified that subsequently to the close of the World War, and before the year 1921, he had conversations with Adolph Pincus concerning his own business and his business with others. With reference to one particular conversation he testified as follows: "We once talked about him being in partnership with Jake concerning some business transactions, concerning some diamonds, and he said that when he and Jake had those business transactions he always wanted him to finally pass on the valuations."

The defendant testified that he had no books of account belonging to the deceased.

Jacob Pincus further testified that Mose Linz, the party from whom he purchased the jewelry mentioned in item (a) of his claim and complaint, was dead, and that one of the partners of the Bonner Manufacturing Company of New York, to whom this particular lot of jewelry was sold, was also dead. He stated that he had no additional evidence with which he could prove the claim, aside from his own testimony.

Under the provisions of subdivision 3 of section 10535, supra, a party to an action may not testify as to the facts of direct transactions or oral communications between himself and the deceased, except where, without the testimony of the witness, injustice will be done. The trial court should not admit the testimony of such a witness until sufficient other testimony has been admitted to warrant the court, in the exercise of its discretion, to render a ruling in favor of the questionable testimony. The court must exercise this discretion with caution and reasonable strictness, and not so loosely as to infringe on the general rule, unless it reasonably appears that otherwise injustice will result, and therefore the exception rather than the rule should apply. (*Wunderlich* v. *Holt,* 86 Mont. 260, 283 Pac. 423; *Langston* v. *Currie,* ante, p. 57, 26 Pac. (2d) 160.)

·At the time the trial court made the ruling as to the admissibility of this class of testimony, which question, as stated,

was addressed to its sound discretion (*Wunderlich* v. *Holt*, supra; *Roy* v. *King's Estate*, 55 Mont. 567, 179 Pac. 821; *Langston* v. *Currie*, supra), the foregoing testimony was before it, and, with this foundation laid, we cannot say as a matter of law that it abused that discretion reposed in it by the statute, and accordingly hold the admission of this testimony was not error.

Counsel for the defendant at the close of the evidence moved ▆▆ ▆▆ the court to take from the consideration of the jury items (a) and (b), as they appear in the complaint and judgment, asserting that they were barred by the statute of limitations, and on the settlement of the instructions it was sought to secure an instruction to the same effect. The court ruled adversely to the defendant on the motion and refused to so instruct. These rulings are assigned as error.

It is the contention of defendant that the above items are barred by the provisions of sections 9030 and 9063, Revised Codes of 1921. Plaintiff, on the other hand, contends that the ruling of the trial court was proper, as the statute of limitations was not pleaded, and hence the right to assert it was waived.

Section 9065, Id., provides, with reference to statutes of limitation, that "the objection that the action was not commenced within the time limited can be taken only by answer." This court has consistently held that the objection of the bar of the statute of limitations can be raised only by answer. (*Bielenberg* v. *Higgins*, 85 Mont. 56, 277 Pac. 631, and cases there cited.) Defendant, however, contends that the provisions of section 10179 are controlling. That section provides that "no claim must be allowed by the executor or administrator, or by the judge, which is barred by the statute of limitations." This court has heretofore held that pursuant to this statute, on the settlement of an account of an executor or administrator, this section absolutely prohibits a waiver of the statute of limitations by such personal representative, and that he may not take credit for claims barred by the statute which he has paid. (*In re Mouillerat's Estate*, 14 Mont. 245,

36 Pac. 185; *Vanderpool* v. *Vanderpool*, 48 Mont. 448, 138 Pac. 772.)

Statutes identical with our section 10179 are found in a number of states. Under those statutes it is held generally, and without exception, so far as our investigation has gone, that this provision is mandatory, and that to permit an executor or administrator by his failure to invoke the plea to suffer judgment upon a claim which, when presented to him, he was bound by law to reject because of the bar of the statute, would be an unwarranted evasion of this mandatory provision, and that whether the objection is raised by answer (or demurrer in those states where that practice prevails) or not, the courts will enforce the statute. (*Reay* v. *Heazelton*, 128 Cal. 335, 60 Pac. 977; *Vrooman* v. *Li Po Tai*, 113 Cal. 306, 45 Pac. 470; *Boyce* v. *Fisk*, 110 Cal. 107, 42 Pac. 473; *Bryson* v. *Hill*, 107 Cal. App. 158, 290 Pac. 52; *Branch* v. *Lambert*, 103 Or. 423, 205 Pac. 995; *Hawkley* v. *Heaton*, 54 Utah, 314, 180 Pac. 440; *Gulbranson* v. *Thompson*, 63 Utah, 115, 222 Pac. 590.)

We find ourselves in accord with the rule announced in the foregoing authorities, and where an executor or administrator is defending a claim and it appears to the court by pleading or evidence that the claim, or some part thereof, is barred by the statute of limitations, it is its duty to raise the bar, for otherwise the court, if it disregard the bar of the statute, would order the claim paid in an action thereon, and on the settlement of an account it would be its duty to disallow the claim once by it ordered paid. Such a situation must not arise.

Each of the items, the subject matters of this lawsuit, appears from the record to have been a separate transaction. Each of the Pincus brothers maintained a separate place of business. The partnership between them was a distinct partnership as to each separate transaction. The statute of limitations therefore commenced to run with reference to each distinct partnership transaction from the time that plaintiff knew the facts which would have justified him in making de-

mand for his share of the profits on any one of the transactions enumerated in his claim. (Sec. 9058, Rev. Codes 1921.)

The testimony does not show that the payments made to plaintiff by decedent were made within five years prior to the commencement of the action, but it indicates that they were made at some time more than five years before its commencement, and therefore there is no question here involved as to any stoppage of the running of the statute by reason of part payment.

It appears from the record that Jacob Pincus knew the facts on which the accrual of his right to demand his profit is based, at some time soon after each of the transactions occurred. Therefore as to items (a) and (b) the cause of action was barred by the statute of limitations, and the trial court was in error in failing to take these two items from the consideration of the jury.

The trial court, over the objection of defendant, instructed ▮▮▮ the jury, in substance, that it was unnecessary for a partnership agreement to be in writing; that such an agreement might be by word of mouth if followed by carrying on business as partners, and that where a partnership is shown to exist, it is presumed, in the absence of testimony to the contrary, that each of the partners shall share the profits and losses equally. Defendant objected to the giving of this instruction on the ground that it contained no definition of a partnership. True, it did not. Such a definition in the form of a proper instruction should have been given, but if defendant desired a more complete statement of the law, it was incumbent upon him to tender a proper instruction, and the record fails to disclose that he did so. (*Dalke* v. *Pancoast*, 63 Mont. 524, 208 Pac. 589; *Zanos* v. *Great Northern Ry. Co.*, 60 Mont. 17, 198 Pac. 138.) Defendant otherwise objected to this instruction, but what we say herein disposes of the other objections adversely to the contentions of the defendant.

Finally it is urged that the evidence fails to support the verdict and judgment. As we view the situation, there would be no useful purpose in prolonging this opinion by a *résumé*

of the testimony. After careful consideration we are of the opinion that there was ample evidence in the record, if believed, to justify the result reached, except as to the items which were excluded from the judgment on motion for new trial.

It is accordingly ordered that the cause be remanded, with directions that the judgment herein be modified by reducing the amount of the judgment to the total of items (e) and (f), being the aggregate sum of $3,035, as they appear in the judgment and in plaintiff's complaint, and that the judgment, as so modified, shall stand affirmed as to the remaining portion as of the date of its entry. Each of the parties to this appeal will pay his own costs.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES ANGSTMAN, MATTHEWS and STEWART concur.